PARKE, RESPONDENT, v. NEW YORK LIFE INSURANCE CO., APPELLANT.

(No. 7,130.)

(Submitted November 17, 1933. Decided December 14, 1933.)

[28 Pac. (2d) 443.]

504

*Mr. Charles R. Leonard* and *Mr. W. D. Kyle,* for Appellant, submitted a brief and argued the cause orally.

506

*Mr. George E. Hurd,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff, as beneficiary, brought this action to recover upon a life insurance policy. In her complaint she alleged the execu-

tion and delivery of the policy by the defendant on the life of Charles F. Parke on July 9, 1930, the death of the insured on May 5, 1931, proof of death made on June 5, 1931; that she was the beneficiary named in the policy at the time of its execution and delivery, and that the insured paid all the premiums falling due and otherwise performed the terms and provisions of the policy. Plaintiff expressly waived any claim under the double indemnity provisions of the policy, and alleged demand for payment of the sum of $3,000, the face of the policy, which was by the defendant refused.

Defendant by its answer admitted all the allegations of the complaint, except it alleged delivery of the policy on August 24, 1930, and denied its delivery on July 9 of the same year, as alleged by the plaintiff. It affirmatively alleged that in the application made by the insured on June 30, 1930, he as a part thereof was asked the following questions and made answers thereto as follows:

"Q. 8. Have you ever consulted a physician or practitioner for or suffered from any ailment or disease of

"(A) The Brain or Nervous System? A. No.

"Q. (B) The Heart, Blood Vessels or Lungs? A. No.

"Q. (C) The Stomach or Intestines, Liver, Kidneys or Bladder? A. No.

"Q. (D) The Skin, Middle Ear or Eyes? Yes, Eye. No. of Attacks: 1. Date: 1925. Duration: 1 yr. Severity: Mild.

"Q. 9. Have you ever had Rheumatism, Gout or Syphilis? A. No.

"Q. 10. Have you ever consulted a physician or practitioner for any ailment or disease not included in your above answers. A. No.

"Q. 11. What physicians or practitioners, if any, not named above, have you consulted or been examined or treated by within the past five years? A. None."

Defendant further alleged that the application which became a part of the policy contained the following provision: "All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no statement

shall avoid the policy or be used in defense to a claim under it, unless it is contained in the written application and a copy of the application is indorsed upon or attached to this policy when issued. No agent is authorized to make or modify this contract, or to extend the time for the payment of premium, or to waive any lapse or forfeiture or any of the company's rights of requirements. All benefits under this policy are payable at the Home Office of the company in the city and state of New York.''

Defendant further alleged that the insured was guilty of fraud in that prior to the application and in the month of May, 1930, the insured consulted and was examined and treated by a physician for an abdominal ailment, of which no mention is made in the application. It is alleged that the ailment for which he was treated developed to be a cancerous growth or condition which caused his death on or about May 5, 1931.

The defendant further alleged that the application provided as follows: ''It is mutually agreed as follows: 1. That the insurance hereby applied for shall not take effect unless and until the policy is delivered to and received by the applicant and the first premium thereon paid in full during his lifetime, and then only if the applicant has not consulted or been treated by any physician since his medical examination; provided, however, that if the applicant, at the time of making this application, pays the agent in cash the full amount of the first premium for the insurance applied for in Questions 2 and 3 and so declares in this application and receives from the agent a receipt therefor on the receipt form which is attached hereto, and if the company, after medical examination and investigation, shall be satisfied that the applicant was, at the time of making this application, insurable and entitled under the company's rules and standards to the insurance, on the plan and for the amount applied for in Questions 2 and 3, at the company's published premium rate corresponding to the applicant's age, then said insurance shall take effect and be in force under and subject to the provisions of the policy applied for from and after the time this application is made, whether the policy be delivered to and received by the applicant or not. 2. That

a receipt on the form attached as a coupon to this application is the only receipt the agent is authorized to give for any payment made before the delivery of the policy. 3. That only the President, a Vice-President, a Second Vice-President, a Secretary or the Treasurer of the company can make, modify or discharge contracts, or waive any of the company's rights or requirements; that notice to or knowledge of the soliciting agent or the medical examiner is not notice to or knowledge of the company, and that neither one of them is authorized to accept risks or to pass upon insurability.''

Defendant further alleged that the first premium in the sum of $167.64 was not fully paid until August 26, 1930, but a portion of the premium in the sum of $85, was paid at the time the application was made and the balance in the sum of $82.64 was paid on August 24, 1930, at which time the policy is alleged to have been delivered to the insured. It is further alleged that on or about the 10th of August, 1930, the insured consulted and was examined and treated by a physician for an abdominal ailment. Defendant alleged that it learned for the first time of these consultations and treatments subsequent to the proof of death made by the plaintiff, and thereupon it gave notice of the rescission of the contract on August 6, 1931, and tendered to the plaintiff the amount of the first premium paid, together with accrued interest, which tender was by the plaintiff refused, and that a like tender was deposited with the clerk of the court for the use of the plaintiff on the filing of its answer.

Plaintiff by reply admitted that the insured made answers to the questions quoted, as set forth in the answer, and also admitted that the application contained the provisions alleged, the payment of the sum of $85 on the first premium on June 30, 1930, the tenders by the defendant of the first premium and interest, together with the refusal of the plaintiff to accept the same, and denied the other affirmative allegations of the answer.

The case was tried as an action at law before the court sitting with a jury. The defendant at every opportunity during the progress of the trial objected to this procedure and asserted that the action should be tried as one in equity.

The evidence discloses that in the month of May, 1930, Dr. Hoyt, the physician who acted in the capacity of examiner for the life insurance company, was called to the residence of the insured. There is a dispute in the record as to whether this occurred on the 24th or the 28th of May, 1930, but it is conceded by all witnesses that on one of these dates the doctor was called and examined the insured, gave him a hypodermic injection to relieve pain, and also prescribed a mild sedative. During the month of August, 1930, or later in the fall, Dr. Smith, a partner in the practice of medicine of Dr. Hoyt, was called to the Parke home, examined the insured and requested him to go to his office. The insured on this occasion requested a hypodermic injection. Dr. Smith prescribed a mild sedative. The evidence is in dispute as to the exact date when this consultation occurred. The record does not disclose whether the insured ever took or used any portion of the medicine prescribed on these occasions, although it was developed through the testimony of a druggist that the prescriptions were filled. On each of these occasions when the doctor was consulted the insured was complaining of pain in the abdomen and back. Dr. Hoyt was not called as a witness on the trial of the case, as at the time of trial he was suffering from a serious illness preventing his attendance. Dr. Smith testified as to his calling on the insured in the summer or fall of 1930, when he made an abdominal and microscopic urine examination, but he could not locate the cause of the pain; that in December, 1930, the witness operated on the insured for an attack of acute appendicitis, removing the appendix, and that subsequent to this operation a lump developed in the left abdomen in the vicinity of the spleen, which was a tumor mass in the abdomen, later proved to be a sarcoma or malignant tumor, and that such a tumorous growth would produce pain.

The trial resulted in a verdict for the face of the policy, plus interest. Judgment was entered in accordance with the verdict. A motion for new trial was made, heard and denied. The appeal is from the judgment.

Plaintiff has filed a motion in this court to dismiss the appeal, on the ground that defendant has failed to follow and has

violated subdivision 3 of Rule VII of this court. The rule in question provides that testimony appearing in transcripts on appeal shall be in narrative form, except that in equity cases and proceedings of an equitable nature, wherein questions of fact arising upon the evidence presented in the record are to be submitted for review, such testimony shall be presented by questions and answers. The testimony in this case appears in the transcript in question and answer form.

As stated above, defendant by objections and motions throughout the trial of the cause at every opportunity insisted that this action was one properly triable in equity. It has continued the same assertion in its brief and oral argument in this court. While we do not agree with defendant's contention, for the reasons which will presently be noted, counsel for the defendant have presented here a record consistent with their contentions made in both courts. Their good faith in so contending may not be questioned. We are unwilling, where counsel have, as here, presented a record in conformity with the theory upon which they presented their case, to inflict the penalty of dismissal even though their theory may be erroneous. To hold otherwise would tend to deprive counsel of their right to present their case upon a theory which they in good faith believe to be correct. Rules of this court are not promulgated for the purpose of depriving litigants of rights, but for the purpose of enabling this court in an expeditious manner to determine the rights of parties litigant. The motion is accordingly denied.

As said above, it is strongly urged that the trial court was in error in trying this action as one at law and not in equity. Where, as here, an action is brought at law on an insurance policy, after death, equity will not, as a general rule, entertain jurisdiction unless some unusual or special circumstances are shown, not here present, as the remedy at law is adequate, in that the defense of fraud may be set up in the action brought on the policy. (3 Black on Rescission and Cancellation, 2d ed., sec. 652; 6 Couch on Insurance, sec. 1435, p. 5081; *Griesa* v. *Mutual Life Ins. Co.,* 169 Fed. 509; *Bankers' Reserve Life Ins. Co.* v. *Omberson,* 123 Minn. 285, 143 N. W. 735, 48

L. R. A. (n. s.) 265; *Biermann* v. *Guaranty Mut. Life Ins. Co.,* 142 Iowa, 341, 120 N. W. 963; *Houston* v. *New York Life Ins. Co.,* 166 Wash. 611, 8 Pac. (2d) 434.)

Counsel for the defendant cite the case of *Sanford* v. *Gates, Townsend & Co.,* 21 Mont. 277, 53 Pac. 749, in support of their contention. That case, however, related to the procedure the court will follow in cases where equitable defenses are pleaded and considered as such. There the question was one of procedure after a court of equity had entertained jurisdiction. Here the primary question is whether the court would entertain jurisdiction of a defense as being equitable in character, and not the procedure to be followed after the question had been resolved in favor of the assumption of jurisdiction. This action was properly tried as one at law.

Defendant urges that the trial court erred in denying its motion for a directed verdict in its favor. The application for insurance by its terms provided that "all statements made by the insured shall in the absence of fraud be representations and not warranties." The statements of the insured in the application, in view of this condition in the policy, mean nothing more than this: Upon the policy becoming effective under its terms and conditions, it remained a binding contract upon the defendant unless it could show that it was induced to issue it by actual fraud practiced upon it by the insured in failing to answer fully and fairly each question propounded to him, according to his best information and belief. (*Pelican* v. *Mutual Life Ins. Co.,* 44 Mont. 277, 119 Pac. 778.) Therefore the burden was upon defendant to show, not only that the representations were untrue, but that they were made with the intent to conceal the condition of the insured's health, and that defendant would not have issued the policy but for the fraud thus practiced upon it. (*Pelican* v. *Mutual Life Ins. Co.,* supra.) In the case cited this court said: "Therefore, if the insured intentionally conceals facts which are material, or makes false representations with reference to them, intending to mislead the insurer, he is guilty of actual fraud, which, at the option of the latter, avoids the policy. Such a fraud, however, is a question of fact for the jury (Rev.

516

Codes, sec. 4980 [Rev. Codes 1907]), and, unless the condition of the evidence is such that only one inference may be drawn from it, the court may not direct a verdict.''

Similar provisions in applications for insurance policies, requiring the applicant to disclose any consultations had with doctors during a period of years prior to the date of application, have frequently been before the courts for consideration. It has generally been held that medical consultation or attendance for merely slight or temporary indispositions need not be disclosed, and that where the applicant, in response to a question similar to the one here, fails to report such medical attendance or consultation, the insured by reason of such failure is not as a matter of law guilty of fraud warranting the trial court in directing a verdict. (*Wharton* v. *Aetna Life Ins. Co.,* 48 Fed. (2d) 37; *New York Life Ins. Co.* v. *Cumins,* 24 Fed. (2d) 1; *Northern Life Ins. Co.* v. *King,* 53 Fed. (2d) 613; *Bankers' Life Co.* v. *Hollister,* 33 Fed. (2d) 72; *Sargent* v. *Modern Brotherhood,* 148 Iowa, 600, 127 N. W. 52; *Cole* v. *Mutual Life Ins. Co.,* 129 La. 703, 56 So. 645, Ann. Cas. 1913B, 748; *Continental Casualty Co.* v. *Winsor,* 258 Mich. 118, 241 N. W. 826; *Yonda* v. *Royal Neighbors of America,* 96 Neb. 730, 148 N. W. 926; *Krauze* v. *Golden Seal Assur. Co.,* 221 App. Div. 380, 223 N. Y. Supp. 143; *Plotner* v. *Northwestern Nat. Life Ins. Co.,* 48 N. D. 295, 183 N. W. 1000; *Fishbeck* v. *New York Life Ins. Co.,* 179 Wis. 369, 192 N. W. 170; *Sovereign Camp W. O. W.* v. *Brown,* 94 Okl. 277, 221 Pac. 1017; *Hale* v. *Sovereign Camp W. O. W.,* 143 Tenn. 555, 226 S. W. 1045, 8 Ann. Cas. 1152; *Schofield* v. *Metropolitan Life Ins. Co.,* 79 Vt. 161, 64 Atl. 1107; *New York Life Ins. Co.* v. *Franklin,* 118 Va. 418, 87 S. E. 584.)

The evidence as to the consultation with the physician occurring in May, 1930, fails to disclose any statement made by the examining physician as to the exact nature of the ailment of the insured.. No expression of opinion was communicated to the insured by the physician that his condition was in anywise serious. The insured was only prevented from following his employment as a result from this indisposition for a day or so.

The office manager of the defendant company at Butte testified that the company, in entering into the contract of insurance, relied on the statements of the insured. It is doubtful whether he was qualified to testify on this subject in view of the fact that it clearly appears from the policy that he was not one of the officers of defendant who was authorized to enter into contracts of insurance on its behalf. Furthermore, there is no testimony in the record to the effect that the defendant would not have entered into the contract of insurance had the insured given all the information at his command in response to the question with regard to his consultation with Dr. Hoyt, occurring in the month of May, 1930. There is no evidence in the record tending to show any connection with the indisposition from which the insured was suffering in the month of May, with the serious disease which thereafter caused his death, aside from the statement of Dr. Smith that the condition from which insured died, in the course of the growth and development of the tumor, might cause pain. Perhaps it might be inferred from this evidence that the pain suffered in May, 1930, was caused by the commencement of development of the tumor, if the existence at the time of the latter fact also be inferred; likewise it is equally inferable from the evidence that the pain was from other causes. When the condition of the evidence is such that more than one inference may be drawn from it, the court may not direct a verdict. (*Pelican* v. *Mutual Life Ins. Co.,* supra.)

The defendant strongly relies upon the case of *Williams* v. *Mutual Life Ins. Co.,* 61 Mont. 66, 201 Pac. 320. There the evidence disclosed that the applicant had consulted a number of doctors about a serious ulcer of the throat. A consultation was had over the insured by three doctors to determine whether or not the ulcer was syphilitic or tubercular in its nature. The insured knew that the physicians who were treating him considered his malady as a serious one; yet he did not disclose these facts in his application for insurance. He died approximately six months subsequent to his examination for insurance as a result of tuberculosis laryngitis. This court in that case held —and we think correctly—an instructed verdict proper. It

will, however, be observed that the facts in the *Williams Case* were indeed very different from those before us here. Only one inference could be drawn from them.

Cases are found in the books holding contrary to those cited supra, which require the applicant to report every consultation with a doctor and hold that upon his failure so to do, the policy of insurance is subject to being voided upon the ground of actual fraud, regardless of whether the ailment was serious or not. But for us to adopt the rule announced in those authorities would require us to depart from the rule adopted by this court in the *Pelican Case,* supra. This we are not disposed to do.

It is urged that by reason of the provision of the application quoted supra, whereby the applicant agreed that the insurance policy was not to become effective until delivery, except where the first premium was fully paid at the time of the taking of the application, and which further provided that the insurance policy was not to become effective if subsequent to the application and prior to the delivery of the policy the insured consulted a physician, the court erred in refusing to direct a verdict.

The evidence is in conflict as to whether the policy was delivered on August 10 or around August 26, 1930. The policy, however, contained this further provision: "This policy takes effect as of the 30th day of June, 1930, which day is the anniversary of the policy." The policy bears the date of July 9, 1930. The consultation with the physician did not occur prior to August 10, 1930, and there is evidence in the record to the effect that it occurred at a later date. If the provision in the application which is made a part of the policy providing that the same should not become effective until its delivery stood alone, a serious question would be presented. But the policy itself, which was executed subsequent to the application and by the defendant, provides a different date at which it would become effective. Manifestly the policy could not become effective until the date of its execution under any theory. These various provisions, when read together, create an ambiguity as to when the policy became effective. Here the policy was pre-

pared by the defendant. The language contained in it is its language. The language of the contract must be interpreted most strongly against the party who caused the uncertainty to exist, and doubt must be resolved in favor of the plaintiff. (*Pelican* v. *Mutual Life Ins. Co.*, supra.)

In the case of *Dubuc* v. *New York Life Ins. Co.*, 21 Alberta, 634, which was subsequently appealed to the supreme court of Canada (15 British Ruling Cases, 434), the identical provision here contained in the application for insurance was involved. The policy there, however, provided that it should become effective on the date of its execution. Prior to the actual delivery of the policy the insured, as the result of an automobile accident, consulted a doctor. Both courts held the policy to be effective as of the date of its execution, and that the provision with reference to the consultation of a doctor subsequent to the application avoiding the policy only applied to the period of time intervening between the date of the application and the execution of the policy. We think the result reached by the Canadian courts is correct.

The first year's premium was paid for protection for a year commencing June 30, 1930. If the policy did not become effective until August 26, as contended by defendant, nearly two months elapsed during which time the insured had no protection; yet he paid for it. We therefore conclude that the policy became effective on the date of its execution, and that a consultation with a doctor subsequent thereto would not invalidate or avoid the policy.

We hold that the court was not in error in denying defendant's motion for a directed verdict.

Error is asserted on the court's giving the following instruction: "The failure of an applicant for insurance to state that he had consulted or been examined, or treated by a physician for some slight or immaterial ailment, would not necessarily be a fraudulent statement within the meaning of the policy involved herein. The consultation, examination or treatment by a physician referred to in the policy involved herein is that such consultation, examination or treatment by a physician

must be for something substantial, or something of some import, or serious character. It is the duty of the applicant to be honest, fair, conscientious and state the facts as he understands them so that the company may determine for itself whether it will issue the policy or not, and if he makes such fair, honest and conscientious statement of facts which are substantially true as he understands them, then the insurer may not avoid the policy on the ground of fraudulent representation.''

In the light of what we have said supra, no error was committed in the giving of this instruction. Nor was there any error in the giving of the court's instruction No. 9, which was along the same line as the above-quoted instruction.

Error is specified upon the court's ruling excluding certain office records of the Butte branch of the defendant company. The purpose of offering these records was to establish defendant's contention that the policy was not actually delivered to the insured until August 26, or near that time. In view of what we have already said, if these records were properly admissible, which we seriously doubt, the error was harmless, as the time of the actual delivery is of no importance under the facts in this case.

Other errors discussed in the brief of defendant are disposed of adversely to its contentions by what has been said above.

We find no reversible error in the record. The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and STEWART concur.

Rehearing denied January 10, 1934.