JOHNSON, RESPONDENT, *v.* METROPOLITAN LIFE INSURANCE CO., APPELLANT.

(No. 7,773.)

(Submitted February 28, 1938. Reargued April 18, 1938. Decided July 20, 1938.)

[83 Pac. (2d) 922.]

*Messrs. Weir, Clift & Bennett,* and *Mr. Newell Gough, Jr.,* for Appellant, submitted an original and a reply brief; *Mr. Gough* argued the cause orally.

*Mr. Victor H. Fall,* for Respondent, submitted an original and a supplemental brief, and argued the cause orally.

HONORABLE CHARLES B. ELWELL, District Judge, sitting in place of MR. JUSTICE STEWART, disqualified, delivered the opinion of the court.

This is an appeal from a judgment in favor of the plaintiff, Margaret Johnson, and against the defendant, Metropolitan Life Insurance Company. The suit was on a contract contained in a policy of life insurance issued to plaintiff's son, in which the plaintiff was named as beneficiary.

From a stipulation of facts entered into by the parties it is disclosed that on July 2, 1929, Richard O. White, the deceased, made application to the defendant company for a policy of life insurance. A policy was issued on July 11, 1929, and was delivered on July 20, 1929, on which date the insured paid the balance of the first premium, $12.88, the sum of $3 having been paid with the application. The insured died on August 16, 1930, no further premium having been paid.

The defendant specifies as error, that:

"1. The court erred in making its order dated August 9th, 1937, wherein the court found the issues involved in this case in favor of the plaintiff and ordered that the plaintiff have

judgment against the defendant in the sum of One thousand four hundred and nine and 39/100 Dollars ($1,409.39).

"2. The court erred in entering its judgment, dated August 9th, 1937, wherein the court rendered judgment against the defendant in the sum of One thousand four hundred and nine and 39/100 Dollars ($1,409.39)."

The crux of the controversy is in determining the date on which the period of grace for the payment of premiums was to start. If, as contended by defendant, the grace period began one year from the date of issue as specified on the face of the policy, the thirty-one days of grace had elapsed before the death of the insured, and the policy had become forfeited because of nonpayment of premiums. If, however, as contended by the plaintiff, the grace period began a year from the date of delivery, July 20, the grace period for payment of premiums had not fully elapsed at the time of the death of the insured, and the policy was then in force.

The rights and liabilities of the parties are governed by the ▆ provisions of the policy and the application which was expressly made a part thereof. The application, in addition to certain informative matter, contains the following language:

"It is understood and agreed: * * * 4. That the Company shall incur no liability under this application until it has been received, approved, and a policy issued and delivered, and the full first premium stipulated in this policy has actually been paid to and accepted by the Company during the lifetime of the applicant, in which case such policy shall be deemed to have taken effect as of the *date of issue as recited on the first page thereof.*"

The face of the policy, in large type, contains the following ▆ provisions:

"Metropolitan Life Insurance Company * * * hereby insures the life of Richard O. White herein called the Insured, in accordance with the terms of this policy, No. 1296484A and promises to pay at its Home Office in the City of New York One thousand dollars upon the surrender of this policy, to the Insured if living on the 11th day of July, 1995 or to Margaret

Johnson, Mother Beneficiary, upon receipt of due proof of the prior death of the Insured. The right on the part of the Insured to change the Beneficiary, in the manner hereinafter provided, is reserved.

"This policy is issued in consideration of the application therefor, *copy of which application is attached hereto and made part hereof,* and of the payment for said insurance on the life of the above named Insured of Fifteen Dollars and Eighty-eight Cents, (Which maintains this policy in force for a period of 12 months from its date of issue, as set forth below) and of the payment hereafter of a like annual premium on each 11th day of July (hereinafter called the due date), until 66 full years premiums shall have been paid or until the prior death of the Insured."

On the face of the policy, on the first page, we also find the following words:

"In Witness Whereof the Metropolitan Life Insurance Company has caused this policy to be executed this 11th day of July, 1929, *which is the date of issue of this policy.*"

Under the heading "Provisions and Benefits" in the policy the following provisions are found:

"All premiums are payable, on or before their due dates, at the home office of the Company, * * * .

"The payment of a premium shall not maintain this policy in force beyond the due date when the next premium is payable, except as hereinafter provided * * * .

"A grace period of thirty-one days, without interest charge, will be granted for the payment of every premium after the first, during which grace period the insurance shall continue in force. * * * .

"This policy and the application therefor constitute the entire contract between the parties, and all statements made by the Insured, shall, in the absence of fraud, be deemed representations and not warranties, and no statement shall avoid this policy or be used in defense of a claim hereunder unless it be contained in the application therefor and a copy of such application is attached to this policy when issued."

It is evident that in order to sustain the judgment and permit recovery under this policy, we must first find that there is an ambiguity in this contract of insurance, in which event we would be justified under the ordinary principles of equity, and in line with sound decisions of this and other courts, in resolving that ambiguity in favor of the insured or his beneficiary, and against the defendant and insurer because it drew the contract and caused the ambiguity. On the other hand, if there is no ambiguity, and the provisions of the contract of insurance are plain and clear and lend themselves to but one construction, it is the duty of the court to give to the contract that one plain and clear construction, and not to attempt to rewrite for the parties a contract differing from the one to which the parties agreed. In this latter respect a contract of insurance does not differ in its construction from any other contract. It is incumbent on this court to examine the four corners of this contract to determine whether such ambiguity exists (*Union Mut. Life Ins. Co.* v. *McMillen*, 24 Ohio St. 67; *Kurth* v. *National Life & Acc. Ins. Co.*, (Tex. Civ. App.), 79 S. W. (2d) 338), and if it does not, then this court is powerless to make a contract for the parties contrary to the one expressed in the agreement. (See *Fratt* v. *Daniels-Jones Co.*, 47 Mont. 487, 133 Pac. 700; *Story Gold Dredging Co.* v. *Wilson*, 99 Mont. 347, 42 Pac. (2d) 1003.)

We believe that the language of the policy is so plain that it can admit of but one meaning. The application authorized the company to issue the policy and to specify upon the face thereof the date it shall be deemed to be effective for the payment of premiums. The face of the policy not only specifies the 11th day of July to be the date of issue of the policy, but also the due date for the payment of premiums. It further specifies that the policy shall be in force no longer than the due date when the premium is payable, except for a grace period of thirty-one days. It is apparent from these provisions that the policy was forfeited for nonpayment of premium thirty-one days after July 11, or before the death of the insured.

The basis of plaintiff's contention is that there was the payment of one year's premium and that he was entitled to one year's coverage, and, as there was no coverage until he paid the balance of the first premium on July 20, he, if the defendant's contention is correct, is being short-changed to the extent of nine days' insurance. In support of this contention the plaintiff cites authorities to the effect that in deciding whether or not a policy was in force at the time of the death of the insured, the computation would begin with the time the insurance became effective, or, as in most cases, on the delivery of the policy to the insured. An examination of these cases fails to disclose one in which the language employed in this application and policy was used. In such cases the courts found the language of the contract—that is, the application and policy—ambiguous, and quite equitably resolved this ambiguity in favor of the insured.

The clear statement contained in the contract before us is that the insured shall receive insurance for twelve months, plus the grace period, from the date of issuance stated in the policy. It is true that the contract operates so as to shorten the first year's coverage by nine days; but this is the express provision of the contract. The insured authorized the company to place the date in the policy from which date the premium should become payable. The insured not only authorized that provision, but accepted the policy containing the language he had authorized, and we know of no provisions of law preventing him from so contracting and agreeing.

- We have searched the record to find any language that would reasonably justify the contention that the assured would actually get a full year's coverage for the first premium. It is clear under the express terms of his own agreement that he would be short the period between the date of the policy and the date of delivery and payment. The cases cited by plaintiff are distinguishable in this respect. In each case which sets out the terms of the policy we find language which would infer that the insured was to get a full year's coverage for the first yearly premium.

*Landrigan* v. *Missouri State Life Ins. Co.,* (Mo. App.) 234 S. W. 1042, holds that the policy was ambiguous and that the calculation of the period for payment of premiums ran from the date of delivery and payment of premium. In the policy it was stated, after setting out the amount of the premium, "being the premium for the first year's insurance under this policy."

*Lyke* v. *First Nat. Life & Acc. Ins. Co.,* 41 S. D. 527, 171 N. W. 603. Facts in this case disclose that the receipt for the payment of the first premium was in the following language: "Received of Frank Lyke Fifty and 36/100 *being the first annual premium* on a policy of insurance * * * ."

*Stinchcombe* v. *New York Life Ins. Co.,* 46 Or. 316, 80 Pac. 213. In quoting the court as to the terms of the policy, it expressly stated that the payment of $70.40 (insured paid for two premiums), "being the premium for two years' insurance."

*Jefferson Standard Life Ins. Co.* v. *Baker,* (Tex. Civ. App.) 260 S. W. 223. In speaking of the policy involved, the court said: "As to the date of the policy, there was no stipulation in the policy, which was the sole contract between the parties, that the policy should bear a date prior to its actual springing into existence, and that any and all stipulations in the policy should be considered as from that date." The court further said in speaking of the terms of the policy: "It is apparent from the language found in the contract of issuance that the words 'anniversary hereof,' mean 'annually from now," or 'annually from henceforth,' and that 'from now' or 'from henceforth' cannot refer to a time prior to the birth of the instrument, but does refer to the time from its delivery, or at least from a date not before the time it came into existence."

In the case of *Shinall* v. *Prudential Ins. Co. of America,* 91 Colo. 194, 14 Pac. (2d) 183, the court based its decision upon the fact that an ambiguity existed in a recital as to the annual premiums, and the insured should have gotten one year's coverage for the first payment. "If the premium then paid carried it only to March 21 of the following year, the insured obtained but eleven months protection for one year's

premium, *contrary to* its recital as to annual premiums.'' The court further stated: ''This decision as always is limited to the facts of this case. But as an additional precaution we say that it does not contemplate cases where * * * there was an unambiguous contract to pay a year's premium for less than a year's protection.''

The plaintiff seems to rely strongly on the case of *McMaster* v. *New York Life Ins. Co.*, 183 U. S. 25, 22 Sup. Ct. 10, 46 L. Ed. 64. The ambiguity found in the language of the contracts in the *McMaster Case* is very patent and justifies the holding in that case. The application there contained a request (which was, it was expressly found, inserted by the agent without the knowledge of the insured, for the purpose of making a certain quota of sales before a certain date) that the policy be dated the same day as the application. This request, however, was not complied with, but the policy did contain the provision that the premiums would be due and payable as of the date of the application. There were three dates involved—December 12th, the date of the application, December 18th, the date of the policies, and December 26th, the date of delivery of the policies. We quote from the decision of Chief Justice Fuller: ''But the policies were not dated December 12, and were dated December 18, the day on which they were actually issued. The applications were in terms parts of the policies, and by them it was agreed that the policies, though issued, should not be in force until the actual payment and acceptance of the premiums. This was a provision intended to cover any time which might elapse between issue and delivery and payment. So that, notwithstanding the premiums in this instance were not actually paid and received and the policies delivered until December 26, it may be conceded that, and in accordance with the practice in such matters, the contracts of insurance commenced to run from December 18 rather than from December 26. They were certainly not in force on December 12, 1893.'' Taking all of these matters into consideration, the court found that McMaster was entitled to the six days' coverage between

December 12 and December 18, the date of the policies, which brought the time of McMaster's death within the grace period.

The plaintiff also relies on the case of *Hampe* v. *Metropolitan Life Ins. Co.,* (Mo. App.) 21 S. W. (2d) 926. This case arose in 1929 and involves a policy almost identical with the one under present consideration. The policies in both cases were those of the Metropolitan Life Insurance Company. The court in the *Hampe Case* held for the plaintiff on the proposition that the due date of the premiums should date as of the time of the delivery and payment of premiums. For authority this holding is based on the prior case of *Halsey* v. *American Central Life Ins. Co.,* 258 Mo. 659, 167 S. W. 951. The court construed the cases as being similar on the point of fact. We cannot agree with this conclusion. In the *Halsey Case* there was an absence of a stipulation as to the due date of the premiums, while in the *Hampe Case* and in this case, it was specifically stipulated in the application and the policy that the policy should be deemed effective as of the date of the issue thereof, and that premiums would be due and payable as of the date of the policy. Also, in the *Halsey Case* there was language in the policy which strongly indicates that it was intended that the insured would get a full year's coverage for the payment of the first year's premium. The application stated *"that all premiums on any policy issued on this application shall be annual premiums."* In the *Hampe Case* and this case there is no such language as before stated. In fact, it is specifically stated in the provisions of the policy that the first premium would procure coverage from the date of issue and twelve months thereafter. These distinctions seem apparent to us and we do not feel bound to be guided by the *Hampe Case.* (As to the effect of the *Halsey Case,* see later decisions of the Missouri court: *National City Bank of St. Louis* v. *Missouri State Life Ins. Co.,* 332 Mo. 182, 57 S. W. (2d) 1066; *Prange* v. *International Life Ins. Co.,* 329 Mo. 651, 46 S. W. (2d) 523, 80 A. L. R. 950; compare *Scotten* v. *Metropolitan Life Ins. Co.,* 336 Mo. 724, 81 S. W. (2d) 313.)

Somewhere in the course of the argument the case of *Parke* v. *New York Life Ins. Co.,* 95 Mont. 503, 28 Pac. (2d) 443, was cited. It is not necessary to enter into an extended discussion of this case. The same questions were not involved, nor were the facts similar, and we cannot see by any stretch of the imagination how anything said in this decision can have any bearing upon the questions of law decided in the *Parke Case,* or where there could be any conflict in the two decisions.

In *Bergholm* v. *Peoria Life Ins. Co.,* 284 U. S. 489, 52 Sup. Ct. 230, 76 L. Ed. 416, the following language is used: "It is true that where the terms of a policy are of doubtful meaning, that construction most favorable to the insured will be adopted. * * * This canon of construction is both reasonable and just, since the words of the policy are chosen by the insurance company, but it furnishes no warrant for avoiding hard consequences by importing into a contract an ambiguity which otherwise would not exist, or, under the guise of construction, by forcing from plain words unusual and unnatural meanings. Contracts of insurance like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary and popular sense. * * * As long ago pointed out by this court, the condition in a policy of life insurance that the policy shall cease if the stipulated premiums shall not be paid on or before the day fixed is of the very essence and substance of the contract, against which even a court of equity cannot grant relief."

In *Rosenthal* v. *New York Life Ins. Co.,* 94 Fed. (2d) 675, we find the following language: " 'While it is highly important that ambiguous clauses should not be permitted to serve as traps for policyholders, it is equally important, to the insured as well as the insurer, that the provisions of insurance policies which are clearly and definitely set forth in appropriate language, and upon which the calculations of the company are based, should be maintained unimpaired by loose and ill-considered interpretations.' * * * It is a sound and well established rule that the date of issue of the policy and dates

when premiums are due are to be taken as those agreed upon by the parties to the policy. (*Klein* v. *New York Life Ins. Co.,* 104 U. S. 88, 91, 26 L. Ed. 662.)''

In the case now before us the facts of the case must control ██ ██ the decision in the light of the general applicable rules. We cannot be influenced by the argument of plaintiff's counsel that the average man, in purchasing a life insurance policy, does not even see the contract itself before delivery to him, and few of them take the time to read it or would understand it if they did read it. We cannot make contracts for competent parties. With the exception of the *Hampe Case,* supra, to the conclusion in which we cannot subscribe, there has no case come to our attention which contains the particular provisions here presented. The contract must stand upon its own provisions, and in them we can find no ambiguity.

Plaintiff makes the further contention that when a life insurance contract actually comes into existence it is presumed to continue, and that there is a presumption against forfeiture. The presumption, however, is that the contract is valid and subsisting and the company must show facts to avoid liability. In this case the fact was the nonpayment of premiums. There is no question as to defendant having pleaded the forfeiture. It is amply pleaded in paragraphs IV and V of the affirmative matter set out in the answer. The plaintiff contends that there is not ''one scintilla of evidence'' as proof of the alleged forfeiture. The only evidence outside of the contract itself is the stipulation entered into between the parties. This stipulation of facts sets out the facts surrounding the contract and especially states that ''after the payment of the first premium on July 20th, 1929, no further premium was ever paid to the company under the said policy.'' The defense is forfeiture for the nonpayment of any premiums after the first. When this nonpayment was admitted in a stipulation of facts, there was no need for proof.

It might also be contended that because there is no proof as to notice of forfeiture and a cancellation of the policy, the insurance company has waived its right to now assert the defense

here asserted. This brings up the proposition of whether or not the contract was ipso facto void on the nonpayment of premium thirty-one days after the due date.

Section 7549, Revised Codes, provides that "Time is never considered as of the essence of a contract, unless by its terms expressly so provided." In this case the terms of the contract specifically state: "The payment of a premium shall not maintain this policy in force beyond the due date when the next premium is payable." It is true that the words, "Time is the essence" are not used, but there is no magic in the use of these words. It is sufficient if the intent is clearly expressed, and it has been so held in the case of *Curtis* v. *Parkham,* 49 Mont. 140, 140 Pac. 511. There the court said: "It is true, of course, that no set form or arrangement of words is necessary, but the contract must, upon its face, convey the meaning that time shall be of the essence." (See, also, *Nelson* v. *Mutual Life Ins. Co.,* 58 Mont. 153, 190 Pac. 927.)

It has been urged that to construe the premium payment date as being the date of the policy violates the provisions of paragraph 5 of Part A of the application, which reads as follows:

"In case of apparent errors or omissions discovered by the Company in Part A of this application, the Company is hereby authorized to amend this application by noting the change in the space entitled 'Corrections and Amendments' and I hereby agree that my acceptance of such policy, accompanied by a copy of the application so amended shall operate as a ratification of such changes or amendments, provided, however, that no change shall be made as to the amount, classification, plan of insurance, or benefits unless agreed to in writing by me."

This appears over the signature of the applicant, and it is argued that his benefits have been changed because of the nine days during which he had no protection. But in the preceding paragraph of Part A of the same application, that is paragraph 4, set out in full heretofore, and likewise over the signature of the applicant, is the specific agreement that the company should incur no liability until the premium had been paid and

the policy delivered, but that when so paid for and received, the policy should be deemed to have taken effect as of the date of issue as recited on the first page of the policy. We cannot see but what everything done was done in exact accordance with the insured's own agreement, over his own signature, and cannot support any contention that any changes or amendments have been made either with or without the agreement of the insured.

The judgment is reversed with direction to enter judgment for defendant.

ASSOCIATE JUSTICES R. J. ANDERSON and MORRIS, and HONORABLE R. E. McHUGH, District Judge, sitting in place of MR. JUSTICE ANGSTMAN, disqualified, concur.

Rehearing denied November 16, 1938.