SCINSKI, Respondent, *v.* GREAT NORTHERN LIFE INSURANCE CO., Appellant.

(No. 7,983.)

(Submitted January 24, 1940.   Decided February 15, 1940.)

[99 Pac. (2d) 218.]

*Mr. P. E. Geagan* and *Mr. John B. McClernan,* for Appellant, submitted a brief and argued the cause orally.

*Mr. H. L. Maury* and *Mr. A. G. Shone,* for Respondent, submitted a brief; *Mr. Shone* argued the cause orally.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

Defendant has appealed from a judgment entered pursuant to a jury's verdict awarding plaintiff $500 as indemnity for the final 11 months of a 30-month period of total disability under a health and accident insurance policy, with interest and costs. A motion for new trial was made by defendant and denied by the court.

The insurance policy in question is divided into several parts, only three of which need be mentioned. Part I is the schedule of indemnities and recites that the monthly accident indemnity is $50. Part II provides specific indemnities for loss of life, hand, foot or eye as the result of accident, and is not applicable here. Part III is the portion in controversy here and is as follows:

"Part III. *Accident Indemnity—Total or Partial Disability.*

"(a) If 'such injury' shall not result in any of the losses Total

Disability enumerated in Part II, but shall, independently and exclusively of all other causes, immediately, continuously and wholly disable and prevent the Insured

from performing any and every kind of duty pertaining to any occupation or business, the company will pay, for *the continuous period of loss of time caused thereby,* not exceeding thirty (30) consecutive months, accident indemnity at the rate per month specified in Par. I;

**Partial Disability** "(b) Or, if 'such injury' shall immediately and continuously disable and prevent the Insured from performing one or more important daily duties pertaining to his occupation or business, either from date of accident or following total disability, the company will pay for the continuous period of loss of time caused thereby, not exceeding six (6) consecutive months, accident indemnity at one-half the rate per month specified in Par. I;

"Provided, that indemnity under this Part III shall not be payable for disability resulting from any loss specified in Part II; nor for *any period* during which the Insured is not under the regular professional attendance and treatment of a legally qualified physician or surgeon."

It will be noted that accident indemnity is to be paid for total disability as defined in the policy "for the continuous period of loss of time caused thereby, not exceeding thirty (30) consecutive months," excluding (1) disability resulting from any of the specific losses mentioned in Part II, and excluding (2) "any period during which the Insured is not under the regular professional attendance and treatment of a legally qualified physision or surgeon."

Payments for the first 9 months after plaintiff's injury were made voluntarily by defendant; the next ten monthly payments were involved in a former action appealed to this court (*Scinski* v. *Great Northern Life Ins. Co.,* 107 Mont. 525, 86 Pac. (2d) 749) and have since been paid. The present suit involves plaintiff's claim for payment for the 11 months from August 6, 1937, to July 6, 1938, the last 11 months of the 30-month period, though by error not questioned by cross-appeal the verdict and judg-

ment were for only $500 (covering only ten monthly payments), together with interest and costs.

The only testimony offered was that of plaintiff and his witness, Dr. Shields. Plaintiff testified concerning the accidental injury of his back in a mine; he stated that ever since the injury he had been unable to stoop over or lift anything without pain and therefore could not work at mining, which was the only occupation he had ever followed; that he had earned nothing since; that the mining company refused him employment; that ever since his injury he could ''do nothing except walking around and eating and that's about all;'' that after his accident he was taken to the hospital, where Dr. Shields treated him, and that he went to see the same doctor twice each month until March, 1938, and once each month thereafter; that since May, 1937, the doctor had given him no medicine but had examined and questioned him and had advised the continuance of steam baths, and that ever since that date he had continued taking that treatment, but that there was no doctor at the steam baths.

Dr. Shields testified to his treatment of plaintiff beginning on January 6, 1936, for ''a contusion or a bruising of the lower lumbar spine;'' he said that for workmen's compensation purposes plaintiff's disability was considered as temporary total until May, 1937, and was then rated as from 20 to 25 per cent. permanent partial; that since that time plaintiff had been in ''a few times,'' but that he could not say how many times or just when, except March 11, May 31, and June 27, 1938; that he saw many patients every day and had to rely entirely upon clerks for his records; that he had done nothing but talk with plaintiff and question him; that plaintiff was taking the steam baths and said that he felt better and that his legs were improving, and ''I told him if they were he could continue;'' that during 1936 and 1937 he did everything he could do for plaintiff professionally, including strapping his back, prescribing different forms of medicine, and diathermy, an electrical heating process, until both he and the patient felt that nothing further could be done; that plaintiff had some arthritis which had not disabled him before his accident but may have been aggravated by it;

that at the time of the trial (January 4, 1939) plaintiff was still unable to do "pick and shovel work" or "hard labor with stooping and lifting heavy weights," but could do "light work such as watching or working at the precipitating tanks," etc.

Appellant names five specifications of error, two of which were that the court erred in denying defendant's motion for a directed verdict, and that the verdict was not sustained by the evidence and was against the law. The other three specifications were of alleged errors in giving Instruction No. 11 and in refusing to give defendant's offered Instructions Nos. 16 and 17.

Instruction No. 11, given over defendant's objection, was as follows: "If you believe from a preponderance of all of the evidence in this case that Mike Scinski was totally disabled during the months mentioned in the complaint and for which he claims disability benefits, then it is immaterial whether Mike Scinski was or was not under the regular professional attendance and treatment of a legally qualified physician or surgeon."

Defendant's offered Instructions Nos. 16 and 17, which were refused, were as follows:

"You are instructed that the plaintiff cannot recover against the defendant for any period of time during which he was not under the regular professional attendance and treatment of a legally qualified physician and surgeon, and that the periods of time for which the plaintiff would be entitled to recover, if under such treatment, are monthly periods, and consequently, he would be entitled to recover for only such monthly periods as he was under regular and professional attendance and treatment of such physician and surgeon." (Offered Instruction No. 16.)

"You are instructed that the doing of acts or the application of medications selected by a person himself and not directed or prescribed by a physician or surgeon are not treatments and do not constitute treatments by a physician or surgeon." (Offered Instruction No. 17.)

Only two questions are raised by the appeal. First, the sufficiency of the evidence to sustain a verdict of total disability and, second, the meaning of the word "period" in the third paragraph of Part III of the policy, whether it means the same

as in the first and second paragraphs of Part III, or whether it means a period of one month because the indemnity is stated on a monthly basis. We shall discuss the latter point first.

The question was not decided in *Scinski* v. *Great Northern Life Ins. Co.*, supra, the case having been disposed of upon the ground that whether plaintiff was under regular medical or surgical attendance and treatment was for the jury.

Upon this question a number of decisions of other courts have been cited by the parties, none of which is in point, due to differences in the facts and in the policies interpreted.

If there is any ambiguity in the policy it must be resolved ▮▮▮ against the defendant, since the policy form was provided by it. (Sec. 7545, Rev. Codes.) However, we are unable to see that there is any ambiguity in the policy. The indemnity for total disability resulting from accident is by the terms of the policy given for *"the continuous period of loss of time* caused thereby, not exceeding thirty (30) consecutive months."* In other words, each accident indemnity period covered by the policy is that continuous period of loss of time resulting from an accident (subject to the limitation stated), and therefore the word "period" in the exclusion clause (the third paragraph of Part III) should normally be construed in the same way unless another construction was obviously intended by the parties. Finding nothing in the policy to the contrary, it seems to us that the word "period" manifestly means the same throughout Part III, and that there is no ambiguity in this respect and therefore no room for interpretation. Appellant contends that since the indemnity is provided at the monthly rate of $50, the word "period" in the third paragraph should be interpreted as meaning a period of one month, instead of "the continuous period of loss of time" mentioned in the two immediately preceding paragraphs. However, if that had been the intent, the defendant could easily have so provided in the policy. Furthermore, since the accident indemnity to be paid upon any claim was naturally made dependent upon the duration of the disability, it necessarily had to be stated in terms of some unit of time, whether month, week or day. It cannot, therefore,

logically be assumed that because the indemnity was to be measured by months the word "period" as used in the third paragraph of Part III should be construed as a period of one month, so as to inject into the contract an ambiguity or inconsistency where none existed. If the indemnity amount had been stated as a weekly or daily amount, would it be argued that no indemnity was payable for any week or day during which the insured received no regular medical treatment?

Appellant's contention seems to be based partly upon the view that "regular" means "periodical," or "recurring at uniform intervals." That is a possible construction, but is not to be assumed so as to result in an ambiguity in the use of the word "period," where no ambiguity would otherwise appear.

"Regular" means systematic, orderly, methodical, not subject to unexplained or irrational variation, not exceptional or unusual. (Webster's New International Dictionary: Merriam Webster, 2d ed.) It does not necessarily mean "periodical" with reference to medical or surgical treatment, unless in the specific instance "regular attendance and treatment" necessarily means "periodical attendance and treatment," which human experience shows is normally not the case in accidental injuries, where the disability normally reaches a static condition either not requiring or not benefiting from further periodical treatment. The doctor's testimony indicated that the plaintiff reached that stage in 1937. Thus if the visits to the doctor and the continuance of steam baths during the months involved in this suit are not considered as regular professional attendance and treatment, it still does not follow that he did not receive such treatment during the period of disability, within the intent of the policy.

Holding, as we must logically do, that "period" as used in both the inclusion and exclusion clauses means the indemnity period following the accident in question, we must conclude that the refusal to give offered Instructions 16 and 17 was not erroneous. Offered Instruction No. 16 incorrectly stated that regular medical treatment had to be shown during each month of the indemnity period.

Offered Instruction No. 17 was inapplicable, since the evidence showed that plaintiff did receive professional medical or surgical attendance or treatment during the 30-month period of claimed disability; and the regularity of such treatment was a question for the jury. (*Scinski* v. *Great Northern Life Ins. Co.*, supra.)

Instruction No. 11 was incomplete. There should have been added to it something substantially as follows: "during those particular months, if you find that during the disability period as a whole he was under such regular attendance and treatment." In other words, it should have been made apparent to the jury that regular treatment during the disability had to be shown, but not necessarily during the months in question.

However, there was ample evidence of regular treatment during the disability and it does not appear that the jury were misled; if they were, the trial court cannot be put in error, since the objection does not "specify particularly wherein the instruction is insufficient or does not state the law." (Sec. 9349, Rev. Codes.) The objection was that the instruction was "an attempt by the court to nullify" a provision of the insurance contract; but it is apparent from the record that appellant's whole contention was that regular professional treatment had to be shown for the particular months in question, and not for the disability period as a unit. Therefore the objection is insufficient to warrant reversal.

The other question raised by appellant is the sufficiency of the evidence to warrant its submission to the jury and to sustain the verdict; and we cannot find such a lack of substantial evidence of total disability as to necessitate a reversal.

The judgment is therefore affirmed.

ASSOCIATE JUSTICES MORRIS, ANGSTMAN, ERICKSON and ARNOLD concur.

Rehearing denied February 29, 1940.