GEORGE ROY NIEWOEHNER, DIRK NIEWOEHNER ET
AL., PLAINTIFFS AND RESPONDENTS, *v.* WESTERN LIFE IN-
SURANCE COMPANY, A MINNESOTA CORPORATION, DEFEND-
ANT AND APPELLANT.

No. 11091.
Submitted September 9, 1966. Decided January 20, 1967.
422 P.2d 644.

Weir, Gough, Booth & Johnson, Edwin S. Booth (argued) and Cordell Johnson (argued), Helena, for appellant.

Hubert J. Massman (argued), Helena, for respondents.

HONORABLE L. C. GULBRANDSON, District Judge, sitting in place of MR. JUSTICE DOYLE, delivered the Opinion of the Court.

This is an appeal by the defendant, Western Life Insurance Company, a corporation, from a judgment entered for the plaintiffs by the Fourteenth Judicial District in and for the County of Meagher.

Plaintiffs are the named beneficiaries of life insurance policy

No. 92980, issued by the defendant, and insuring the life of George Edward Niewoehner in the face amount of $5,500.00, dated September 12, 1939.

The case was tried by the district court sitting without a jury upon an agreed statement of facts, and upon testimony and exhibits, after defendant's motion for a summary judgment was denied.

The issue before the district court and presented upon appeal is; Was the accidental death benefit provision of the policy in effect on August 4, 1963, the date of the accidental death of the insured?

The policy, folded, contains the following information on its cover:

"Western Life Insurance Company, Helena, Montana,
No. 92980. Name: *George Edward Niewoehner,*
Face amount *$5,500.00.*
Age: 27; Date *September 12, 1939;*
Premiums: Annual *$191.62;* Semi-Annual *$98.68;*
Quarter-Annual *$50.30;*
Quarter-Annual *$50.30;*
Endowment at age *60;*
Premiums payable for *20* years;
Non-Participating But Exchangeable when Fully Paid-up or at Maturity for annual Dividend Policy.
*Waiver of Premium*
*Double Indemnity*

Notify the Company of any change of Address. It is not necessary to employ any person in collecting any Benefits under this Contract. Write direct to the Company stating number of this contract."

The first page of the unfolded policy itself contains, in somewhat more detail, the salient facts concerning the policy that are contained on the cover of the folded policy. The first page sets forth that the premium payments can be paid monthly at the rate of *$16.92 per month,* for twenty years or until prior death

of the insured. At the bottom of this page the effective date of *September 12, 1939,* is set forth. Below the signature the policy states that it is an Endowment at Age *60,* premiums payable for *20* years, *Waiver of Premium, Double Indemnity.* The italicized portions above appear as red typing or stamping on the policy.

The detailed and specific policy provisions begin on page two of the policy. The subject of each paragraph is stated in the left-hand margin, under separate numbers for each paragraph.

The first paragraph of page two states that the policy contains the entire contract.

The second paragraph of page two states that the policy shall be incontestable, after being in force two years from its date of issue during the lifetime of insured, except (a) for failure to pay premiums and (b) as to the provisions and conditions, if any, relating to benefits in the event of total and permanent disability and those granting additional insurance in the event of death resulting from injury through accidental means.

The Accidental Death Benefit "rider" which forms a portion of this contract provides, in its first paragraph, as follows:

"If, during the premium paying period of this Policy, and while this Policy is in full force and effect, the death of the Insured shall result, from accidental causes, as defined in this benefit, the Company will pay in addition to other Death Benefits an amount equal to the Face Amount of this Policy."

The fifth paragraph of the Accidental Death Benefit provides in part, as follows:

"This Benefit shall be automatically cancelled and the premium therefor will no longer be payable when and if * * * (d) This Policy * * * becomes paid-up for its Face Amount."

The seventh paragraph of the Accidental Death Benefit states: "When this Benefit is cancelled or otherwise terminated, the annual premium under this policy will be reduced $11.00, which is the premium charged for this Benefit and which amount is included in the premium stated in this policy."

The policy became a paid-up policy at the end of the twenty-year premium paying period on September 12, 1959. Upon receipt of the final premium, the defendant issued a paid-up policy certificate stating: "This is to certify that all premiums due and payable on policy No. 92980 on the Life of George Edward Niewoehner have been paid and such Policy is hereby declared Paid-up in accordance with the terms thereof."

The defendant paid the face amount of the policy, plus paid-up additions, to the beneficiaries but refused payment of the Accidental Death Benefit on the grounds that the coverage was not in effect on the date of death, August 4, 1963.

Plaintiff offered four exhibits which were received in evidence as follows:

Plaintiff's Exhibit No. 1: Premium deposit fund record.

Plaintiff's Exhibit No. 2: Loan record showing that the insured borrowed money on the policy after the "Paid-up Policy Certificate" was issued.

Plaintiff's Exhibit No. 3: Receipt for $226.38 as "annual premium due September 12, 1960." This exhibit also contained the statement, "This is not a premium receipt."

Plaintiff's Exhibit No. 4: Certified copy of page A-12 of the rate manual, 1963 edition, of the defendant Life Insurance Company, which exhibit indicates that the defendant Company, by 1963, had changed the language of the Accidental Death Benefit riders, then being issued, to provide coverage to the anniversary date of the policy nearest the insured's 65th birthday.

Exhibit number 2 indicates that the amount referred to in exhibit number 3 was in fact interest on the loan, and the policy itself bears a stamped and written statement that the loan was paid in full on August 9, 1961.

The court made Findings of Fact which included the following:

"6. The provisions of the policy are ambiguous, uncertain, vague and evasive in the following instances:

"(a) The cover and first page of the policy contain stamped purple-ink notations stating that the policy provides for 'Waiver of Premium' and 'Double Indemnity'; However, the insurer has attempted to limit coverage, exclude coverage, and cancel coverage resulting from accidental death by numerous Provisions appearing on the unnumbered ninth page of the policy.

"(b) The policy provision relating to Double Indemnity purports to be limited to the 'premium-paying period,' a period of uncertain duration, and a term describing the period during which the policy is maintained, without adding any limitation not otherwise existing.

"(c) The face of the policy sets forth the premium as a single amount in contradiction to the unnumbered pages 8 and 9 of the policy, which purports to provide separate monthly premiums for the Waiver of Premium and Double Indemnity provisions of the policy.

"(d) The provisions of the policy are not set forth with simplicity and clarity of expression.

"(e) The defendant insurer's agent identified monies received from the insured as 'annual premium' at a time when the insured claims no premium was due on the policy.

"(f) The policy contains contradictory language and provisions referred to applicability of Waiver of Premium benefits and Accidental Death Benefits."

The court then filed Conclusions of Law:

"1. That the plaintiff beneficiaries under policy No. 92980 are entitled to double indemnity benefits for accidental death of the insured.

"2. The amount of said benefits is the sum of $5,500.00 plus interest on said sum in the amount of 6 per cent per annum from and after the date of death until said sum is paid.

"3. That said benefits are due to the plaintiff beneficiaries because of:

"(a) The presence of vague, evasive, uncertain and ambiguous language existing in the policy.

"(b) The fact that 'premium paying period' is a descriptive and not limiting policy provision.

"(c) The fact that the premium was represented to the insured on the face of the policy as a single amount and is therefore not severable.

"(d) The fact that the policy provisions were not set forth with simplicity and clarity of expression, despite the fact that it was within the power, and was the duty of the defendant insurer to do so.

"(e) The fact that the defendant insurer, through its agent, identified monies received from the insured after the paid-up policy certificate had been issued, as 'annual premium.'

"(f) The fact that the cover and first page of the policy by purple stamped ink notation provides for 'double indemnity' and such notation under the provisions of Section 13-717, R.C.M.1947, controls over the purported limiting terminology appearing on page 8 (as the court has numbered it) of the policy, and the court believes the decisions in [New York Life Ins. Co.] v. Hiatt, [9 Cir.] 140 F.2d 752, 168 A.L.R. 551, and Montana's Holmstrom cases, Holmstrom v. Mutual Benefit Health & Accident Ass'n, 139 Mont. 426, 364 P.2d 1065, make the ruling herein foregone."

Defendant's motion for amended and additional findings, or for a new trial, was denied and defendant appealed from the judgment.

Section 13-717, R.C.M.1947, relied upon by the court and referred to in its conclusions of law reads:

*"Contract—partly written and partly printed—written parts control.* Where a contract is partly written and partly printed, or where part of it is written or printed under the special directions of the parties, and with a special view to their intention, and the remainder is copied from a form originally prepared without special reference to the particular parties and

the particular contract in question, the written parts control the printed parts, and the parts which are purely original control those which are copied from a form. And if the two are absolutely repugnant, the latter must be so far disregarded."

For the judgment to stand, this court must find that the contract was ambiguous.

This court has many times stated that in case of uncertainty, every doubt should be resolved in favor of the insured and the policy should be construed strictly against the insurer.

On the other hand, if the intention of the parties is clear, the courts have no authority to change the contract in any particular, or to disregard the express language used. In James v. Prudential Ins. Co. (1957), 131 Mont. 473, 312 P.2d 125, 127, the court said:

"But even though it is a cardinal principle of insurance law that a contract of insurance is to be construed liberally in favor of the insured and strictly against the insurer, contracts of insurance should be given a fair and reasonable construction. Park Saddle Horse Co. v. Royal Indemnity Co., 81 Mont. 99, 111, 261 P. 880. In arriving at such construction, no matter how strictly construed against the insurer the intention of both insurer and insured is to be ascertained from the language of the policy. R.C.M.1947, section 13-704. Effect must be given to every part of the policy contract. R.C.M.1947, 13-707. The words of the contract are to be understood in their usual meaning. R.C.M.1947, § 13-710. Common sense controls."

In Holmstrom v. Mutual Benefit Health and Accident Association, (1961), 139 Mont. 426, 428, 364 P.2d 1065, 1066, which was cited with approval in Kansas City Fire & Marine Insurance Co. v. Clark, 217 F.Supp. 231, (D.C.Mont.1963), affirmed in 329 F.2d 647, this court said:

"The full policy must be read to see whether or not any ambiguity exists, and whether if such ambiguity does exist if it is confusing and uncertain in its terms. Ambiguity does not exist just because a claimant says so. It can only exist where

the wording or phraseology of a contract is reasonably subject to two different interpretations. See Osterholm v. Boston & Montana Mining Co., 40 Mont. 508, 107 P. 499; Johnson v. Metropolitan Life Ins. Co., 107 Mont. 133, 83 P.2d 922; Scinski v. Great Northern Life Ins. Co., 110 Mont. 106, 99 P.2d 218."

Here the policy clearly provides that premiums are payable for 20 years. The policy was issued in 1939. Premiums were all paid and a paid-up policy certificate was issued in 1959, at the end of the premium paying period. The Accidental Death Benefit rider clearly provides that the benefit is payable only if insured dies accidentally during the premium paying period of the policy, and that the benefit is automatically cancelled if the policy becomes paid up. The premium paying period ended in 1959 and the policy became a paid-up policy in 1959, some four years prior to insured's accidental death in 1963.

The rubber stamped, red-inked phrase "Double Indemnity" that appears on the cover and first page of the policy is not determinative of all issues.

Section 13-717, R.C.M.1947, sets forth the rule that written parts control the printed parts, and if the two are absolutely repugnant, the latter must be so far disregarded. This statute, however, does not restrict the right of the parties to explain the coverage, or limit it, in the body of the policy.

Clearly the insured could take the basic insurance at lower premium cost without the Accidental Death Benefit rider or the Permanent Total Disability rider. Here the insured applied and paid for both, and the riders were inserted in the policy and the policy was stamped with the two phrases "DOUBLE INDEMNITY" and "WAIVER OF PREMIUM."

The two stamped phrases do not create ambiguity. They do denote that the policy incorporates double indemnity provisions and waiver of premium provisions. To determine the scope of each, the riders themselves must be read and given a fair interpretation. Either, or both, of the coverages could have been

dropped by the insured on any anniversary date of the policy and the annual premium would have been reduced $11.00 for the double indemnity provision and $4.18 for the waiver of premium provision. Clearly, the provision of each coverage must, of necessity, be examined to determine the rights of both parties.

For interpretation of very similar policy provisions, see Hubach v. Mid-Continent Life Ins. Co., (1958), 228 Ark 926, 311 S.W.2d 307.

The mere fact that the cover of the policy sets forth the annual, semi-annual and quarter annual premiums, and that page one of the contract sets out the monthly premium, does not make this a "single premium" policy with unseverable double indemnity provisions. Both benefit riders clearly provided that the premium would be reduced by a fixed amount if the coverage was dropped by the insured.

Also, the fact that an employee of the defendant issued a temporary receipt to the insured for interest paid on the loan made after the policy became "paid-up" does not constitute an admission against interest on the part of the defendant. Exhibit No. 3 clearly indicated it was not a premium receipt and exhibit No. 2 clearly indicated that the payment was for interest. At the time of this payment the paid-up certificate had been issued, no other premiums had been paid, and the insured, a practicing lawyer, could not have been misled into believing that he was embarking on another premium paying period.

We further find that the conduct of the defendant, evidenced by exhibit No. 4, in issuing a different Accidental Death Benefit coverage some 24 years after the policy here was issued, is not material or relevant.

We find that the death of the insured did not occur during the premium paying period and further that the policy was a paid-up policy, and that therefore, the Accidental Death Benefit provision was not in force on the date of death of the insured.

The judgment is reversed with directions to enter judgment for the defendant.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, CASTLES and JOHN C. HARRISON, concur.