WILLIAMS, RESPONDENT, *v.* MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, APPELLANT.

(No. 4,447.)

(Submitted September 19, 1921. Decided October 10, 1921.)

[201 Pac. 320.]

*Life Insurance—Fraudulent Representations—Concealment of Prior Medical Treatment—Policy Void.*

Life Insurance—Application—Fraudulent Representations—Concealment of Prior Medical Treatment—Policy Void.

1. In his application for a life insurance policy which provided, among other things, that the statements of the insured, in the absence of fraud, should be deemed representations and not warranties, the applicant represented that the only illness or disease he had had since childhood was a slight cold, and that he had consulted, or been treated by, only one physician for five years last past. The evidence showed that four months before making these statements on his medical examination he had been treated by two physicians and was present at a consultation respecting his case held between the two and a third, that the treatment was not for a cold but for a serious ulcer of the throat of syphilitic or tubercular nature. Insured died of tubercular laryngitis some four months after issuance of the policy. *Held,* that the representations, accepted and acted upon as true by defendant to its prejudice, were as to material facts affecting the risk, intended to mislead and therefore fraudulent, justifying the insurer in avoiding the policy.

---

1. Misrepresentation by insured as avoiding life insurance policy, see note in Ann. Cas. 1915A, 460.

Same—Fraud—When Question of Fact—When of Law.

   2.   The question of fraud is always a question of fact for the jury,
unless the evidence is uncontradicted and it is impossible to draw
any inference from it other than that it entered into the particular
transaction, whereupon it becomes one of law for the court.

*Appeals from District Court, Beaverhead County; Jos. C.
Smith, Judge.*

ACTION by Ruby R. Williams against the Mutual Life In-
surance Company of New York. Judgment for plaintiff, new
trial denied, and defendant appeals from the judgment and
the order. Reversed and remanded, with directions.

*Mr. F. C. Fluent* and *Mr. Charles R. Leonard,* for Appellant,
submitted a brief; *Mr. Leonard* argued the cause orally.

It needs no argument to establish the fact that no insurance
company could insure a man who a few months previous had
been treated for an ulcerated throat which might be of a
tubercular nature any more than a fire insurance company
would insure a building which was on fire.

The false answers of insured voided the policy. (*Gardner
v. North State Mutual Life Ins. Co.,* 163 N. C. 367, Ann. Cas.
1915B, 652, 48 L. R. A. (n. s.) 714, 79 S. E. 806; *Gordon v.
Prudential Ins. Co.,* 231 Pa. St. 404, 80 Atl. 882.)

The parties had a right to contract in the policy covering the
conditions under which the policy should take effect and one
of the conditions was that the insured should be actually in
good health at the time of the issuance of the policy. That
is a reasonable provision in an insurance policy and, in fact,
a necessary one, for the very existence and security of life
insurance companies is based upon the good health of the in-
sured, and all of its calculations and mortuary estimates are
based upon the fact that its policies are written upon lives of
persons in good health. (*Metropolitan Life Ins. Co. v. Howle,*
62 Ohio St. 204, 56 N. E. 908; *Packard v. Metropolitan Life*

*Ins. Co.,* 72 N. H. 1, 54 Atl. 287; *Perry* v. *Security Life & Annuity Co.,* 150 N. C. 143, 63 S. E. 679.)

The answer of the applicant for the policy having been untrue and the matter material, and the maker of the statement necessarily knowing it was untrue when he made it, the intention to deceive the insurer is necessarily implied as the natural consequence of such act. (*Claflin* v. *Commonwealth Ins. Co.,* 110 U. S. 81, 28 L. Ed. 76, 3 Sup. Ct. Rep. 507 [see, also, Rose's U. S. Notes]; *Northwestern Mut. Life Ins. Co.* v. *Montgomery,* 116 Ga. 799, 43 S. E. 79; *Boddy* v. *Henry,* 126 Iowa, 31, 101 N. W. 447; Kerr on Fraud, p. 55.)

*Messrs. Rodgers & Gilbert,* for Respondent, submitted a brief; *Mr. Harry G. Rodgers* argued the cause orally.

The law applicable to the pleadings and the facts in this case has been pronounced by this court in the case of *Pelican* v. *Mutual Life Ins. Co.,* 44 Mont. 277, 119 Pac. 778. There it is said: "When, therefore, the statements are mere representations, the transaction becomes a matter of fair dealing on the part of the insured; and, if it appears from the application that the questions put to the applicant call for information founded upon his knowledge or belief, a misstatement or omission to answer will not avoid the policy, unless the answer is made knowingly and willfully with intent to deceive." And again: "Therefore, if the insured intentionally conceals facts which are material, or makes false representations with reference to them, intending to mislead the insured, he is guilty of actual fraud, which at the option of the latter, avoids the policy. Such a fraud, however, is always a question of fact for the jury (Rev. Codes, sec. 4980), and unless the condition of the evidence is such that only one inference may be drawn from it, the court may not direct a verdict."

The cases cited by appellant in support of its contention are not in point. In the case of *Metropolitan Life Ins. Co.* v. *Howle,* 62 Ohio St. 204, 56 N. E. 908, the provision that the

insured should be in good health at the time of its delivery was contained in the policy itself, and not in the application. The same is true of the case of *Packard* v. *Metropolitan Life Ins. Co.*, 72 N. H. 1, 54 Atl. 287. In the case of *Perry* v. *Security Life & Annuity Co.*, 150 N. C. 143, 63 S. E. 679, the policy had not been accepted by the insured for the purpose of taking effect, and he was under no obligation to pay the premium. Furthermore, the defendant had, by the issuing of a conditional receipt, waived the requirement that insured should be in good health at the time of the delivery of the policy.

MR. JUSTICE REYNOLDS delivered the opinion of the court.

This action was commenced to recover of defendant the amount alleged to be due upon an insurance policy upon the life of the deceased husband of plaintiff. Trial was had before a jury, which rendered a verdict in favor of plaintiff. Judgment was entered in accordance with the verdict. Motion for new trial was made and overruled. Defendant has appealed from the judgment and from the order overruling the motion.

On January 10, 1917, the insured, Oscar H. Williams, made application to the defendant company for insurance upon his life. On January 23, 1917, he passed the medical examination, and on February 5, 1917, the policy was issued. Insured died on the 28th of June, 1917, as a result of tuberculosis laryngitis.

The defendant admits the execution of the policy, but makes [1] two separate affirmative defenses: First, that the policy was procured through fraud; and, second, that insured was not in good health at the time of payment of first premium and at the time of the delivery of the policy, the same being alleged as conditions precedent to the policy taking effect. In our disposition of the case, it is only necessary to consider the first one of these defenses.

The policy contains this paragraph: "This policy and the application herefor, copy of which is indorsed hereon or

attached hereto, constitute the entire contract between the parties hereto. All statements by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no such statement of the insured shall avoid or be used in defense to a claim under this policy unless contained in the written application herefor and a copy of the application is indorsed on or attached to this policy when issued.''

At the time of the examination of insured, he was required to make answer to a number of questions submitted by the medical examiner as a part of the application. In making answer to some of these questions, he stated that the only illnesses, diseases, injuries, or surgical operations that he had had since childhood were a fracture of the right thigh in 1904, a slight cold in September, 1916, of a duration of only from two to three days, and with complete recovery in September, 1916, an injury to right eye in 1899. He also stated that the only physician who had prescribed for or who had treated him, or with whom he had consulted in the past five years, was Dr. McMillan, of Dillon, in September, 1916, for the cold above mentioned, and that he was at the time of his examination in good health. The undisputed testimony shows that these answers of insured did not correctly state the facts. It appears conclusively that he had received treatments not only from Dr. McMillan, but also from Dr. Thorkelson in September and October, 1916, and was present at a consultation over his case between these two doctors and Dr. Jones at about the same time; that the treatments he received were not for ''cold'' as that term is commonly understood, but for a serious ulcer in the throat. At the consultation between Drs. Thorkelson, McMillan and Jones, the question was discussed as to whether or not this ulcer was syphilitic or tubercular in nature. At that time a smear was taken from his throat and examined to determine whether or not the ulcer was a specific one, which test showed negative. The Wasserman test was also made for the

same purpose which showed negative. This latter test was made upon the suggestion of the insured on account of the history of his case. No test was made to determine whether or not it was tubercular. The testimony is disputed as to whether or not it was tubercular at that time, although it is admitted that he died the following June of tuberculosis laryngitis. However, the facts were conclusively established that the malady was a serious one, much more serious than is implied by the term a "cold," and that the insured knew that the physicians who were treating him so considered it. These facts were very material as bearing upon the risk that the company was assuming in writing his insurance, and it is hardly conceivable that if the company had known the real situation, it would have accepted the risk without first satisfying itself that the ulcer was nothing more than a mere local infection that would quickly pass away.

Construing the paragraph of the policy above mentioned, in the light of these facts, it is for this court to determine whether or not such misrepresentations shall be deemed fraud and construed as warranties affecting the validity of the policy. This court had a similar question under consideration in the case of *Pelican* v. *Mutual Life Ins. Co.*, 44 Mont. 277, 119 Pac. 778, in which the rule applicable to this case was laid down as follows: "That upon the payment of the first premium it [the policy] became a contract binding upon the defendant, unless the latter could show that it was induced to issue it by actual fraud practiced upon it by Pelican, in failing to answer fully and fairly each question propounded to him, according to his best information and belief. * * * This being so, the burden was upon defendant to show, not only that the representations were untrue, but were made with the intent to conceal the condition of Pelican's health, and that defendant would not have issued the policy but for the fraud thus practiced upon it. 'Each party to a contract of insurance must communicate to the other,

in good faith, all the facts within his knowledge which are, or which he believes to be, material to the contract, and which the other has not the means of ascertaining, and as to which he makes no warranty.' (Rev. Codes, sec. 5570.) Therefore, if the insured intentionally conceals facts which are material, or makes false representations with reference to them, intending to mislead the insurer, he is guilty of actual fraud, which, at the option of the latter, avoids the policy. Such a fraud, however, is always a question of fact for the jury (Rev. Codes, sec. 4980), and, unless the condition of the evidence is such that only one inference may be drawn from it, the court may not direct a verdict. The inquiry is: First, as to the truth of the representations; second, if untrue, whether they were intended to mislead; third, whether the adverse party accepted them as true and acted upon them; and, fourth, was he prejudiced? (*Power & Bro.* v. *Turner,* 37 Mont. 521, 97 Pac. 950.) The concealment of the material fact is equivalent to a false representation that it does not exist.''

We cannot escape the conclusion that the insured made false statements with knowledge of their falsity; that the defendant accepted his representations as true, acted upon them, and was prejudiced. The concealment on his part of the facts that he

[2]   had been treated from May until October of 1916, a part of the time at least, for an ulcer which he knew was suspected to be either tubercular or syphilitic in nature, and that he had consulted Drs. Thorkelson and Jones and had been treated by Dr. Thorkelson, constituted misrepresentation as to material facts affecting the risk and was fraudulent, thereby justifying the insurance company in avoiding the policy. The evidence upon this feature of the case being uncontradicted and it being possible to draw only one inference from it, there is presented a question of law for the court and not a question of fact for the jury. The fraud being conclusively established, the evidence was insufficient to sustain a verdict in favor of plaintiff.

For this reason the judgment and order overruling motion for new trial are reversed, and the cause is remanded to the trial court with directions to enter judgment in favor of defendant.

*Reversed.*

Mr. Chief Justice Brantly and Associate Justices Cooper, Holloway and Galen concur.

(Submitted September 19, 1921.   Decided October 10, 1921.)