GOLDEN, Appellant, v. BROTHERHOOD OF RAILROAD TRAINMEN, Respondent.

(No. 7,946.)

(Submitted June 23, 1939. Decided July 15, 1939.)

[96 Pac. (2d) 428.]

86

*Mr. John B. McClernan,* for Appellant, submitted a brief, and argued the cause orally.

*Messrs. Corette & Corette,* for Respondent, submitted a brief; *Mr. Robert D. Corette* and *Mr. William A. Davenport,* of Counsel, argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

On May 1, 1926, Patrick Golden entered into a pension contract with the Brotherhood of Railroad Trainmen, a voluntary, unincorporated fraternal association. By the terms of the contract he was to receive a pension in the event of his becoming totally and permanently disabled, or upon reaching the age of seventy and being permanently retired from active service by his employer. In the event of his death, the pension was to be extended to his widow, provided he was a member whose name was on the Brotherhood's pension roll. February 6, 1935, while the contract was in force, Golden met with an accident which rendered him totally and permanently disabled. He died from the effects thereof within an hour. Golden's widow sought in the district court to recover certain alleged pension money due, and also the return of all assessments paid by deceased. Judgment was rendered against her. This is an appeal from that judgment.

The cause was submitted to the court upon an agreed statement of facts, both sides having waived a jury. The sole question for decision is whether it was necessary for the name of

Patrick Golden to be on the pension roll at the time of his death before the benefits of the pension could be extended to his widow.

By the express terms of the pension certificate, the Brother-hood's constitution and general rules governing the pension department were made a part of the contract. In arriving at a decision, therefore, it is necessary for us to construe the provisions of the certificate along with the provisions of the constitution and general rules. (*Kennedy* v. *The Grand Fraternity,* 36 Mont. 325, 92 Pac. 971, 25 L. R. A. (n. s.) 78; *Osborne* v. *Supreme Lodge etc. Insurance Department,* 69 Mont. 361, 222 Pac. 456; *Clark* v. *Grand Lodge of Brotherhood of Railroad Trainmen,* 328 Mo. 1084, 43 S. W. (2d) 404, 88 A. L. R. 150; 19 R. C. L., sec. 6, p. 1185.)

Section 14 of the constitution and general rules of the Brother-hood, pertaining to the pension department, provides as follows: "The Beneficiary Board shall be the Pension Board. * * * They shall also pass upon all applications for pensions, and no member will be placed on pension roll until application for same has been approved by the Pension Board. Their decision shall be final unless reversed by the Board of Insurance, whose decision will be final."

According to the agreed statement of facts, during the lifetime of Golden neither he nor his wife made any application to have his name placed upon the pension roll, nor to have a pension paid to either one. Since the husband's death, however, the widow has applied for the pension, and the Brotherhood has refused to pay it or furnish the necessary forms for having the name of deceased placed on the roll. Its refusal to in any way acknowledge liability under the pension certificate is on the sole ground that deceased was not at the time of his death on the pension roll, as required by the constitution and general rules, particularly section 15–A.

Section 15–A provides: "A member of this department who has been a member for two years, but who from physical or mental cause is, in the opinion of the Pension Board, totally and permanently disabled or who has reached the age of seventy

years and has been permanently retired from active service by his employer, shall receive from the funds of this department a monthly pension as hereinafter provided. In the event of the death of a member who is on the pension roll, the monthly pension will be extended to his widow, so long as she remains unmarried, and if no widow to dependent mother, providing the dues of the deceased are paid.''

Appellant's contention in substance is that the requirement ██ ██ of having members' names on the pension roll is a condition subsequent and not a condition precedent to liability. She contends that her husband's name could not under the circumstances have been placed on the roll prior to his death; that such would have been an impossibility—the Brotherhood's headquarters being in Ohio and there having been only an hour's time between the fatal injury and death. She further urges that making application for the pension within a reasonable time after her husband's death was all that could have been intended by the Brotherhood in its constitution and general rules.

Inclined as we are to sympathize with the plight in which the circumstances of this cause have placed appellant, we are nevertheless faced with the statutory duty to interpret and enforce the contract between the parties as written. (Sec. 10519, Rev. Codes.)

Clearly, the respondent association had the right to require its members to be governed by any and all reasonable regulations and requirements necessary for the proper functioning of the pension department. (19 R. C. L., sec. 13, p. 1192; *Supreme Lodge* v. *Raymond,* 57 Kan. 647, 47 Pac. 533, 49 L. R. A. 373.) In fact, as noted before, deceased consented to be so governed by signing the pension certificate and accepting the constitution and general rules as a part of his contract. If, on the other hand, a condition in the contract would have been impossible of fulfilment, unlawful, or repugnant to the nature of the interest created by the contract, it would be void under the law. (Sec. 7407, Rev. Codes.)

The mere fact that the contract was more limited in its coverage, and less elastic in its prerequisites to attaching liability

than deceased might fairly have expected he was entering into with the Brotherhood, cannot justify this court in writing a new contract for the parties (*Brian* v. *Oregon Short Line R. Co.*, 40 Mont. 109, 105 Pac. 489, 25 L. R. A. (n. s.) 459, 20 Ann. Cas. 311), or construing the contract of the parties more liberally and equitably than the clear meaning of its terms warrant in appellant's favor. (Secs. 10519, 10520, Rev. Codes.)

It is argued, in effect, that the mere matter of getting a member's name on the pension roll is a formality which can be taken care of within any reasonable time so long as the member is otherwise qualified for the pension. On the face thereof such argument is plausible enough, but it must assume for its premise that all that is necessary for a member to become eligible for the pension is that he become totally and permanently disabled, and that the pension vests at that time. This, however, is not the fact. Section 18 of the Brotherhood's general rules provides expressly that a member must apply for his pension. The section reads:

"Application for Pension must be made by the member claiming the pension, his guardian or legal representative (if unable to make it himself), said application to be made on a form prepared and furnished by the officers of this department. No member is to receive a pension and his name will not be placed on the pension roll until application has been approved by the Pension Board."

As observed from sections 14 and 18, set out supra: "No member will be placed on pension roll until application for same has been approved by the Pension Board." Thus it is obvious that a member injured does not just automatically or as of course have a vested right to the pension upon becoming injured, but his application must first be favorably considered and approved by the pension board. In fact, from the very wording of section 17, relative to the disability, at least one of two things apparently must affirmatively appear before favorable action would be taken on a pension application. Section 17 provides:

"No member of this department shall receive a pension unless he had been disabled for a period of one year, except when the nature of his disability is such that no question of doubt as to its permanency can exist, in which case the applicant upon favorable consideration of his claim by the Pension Board shall be placed upon the pension roll as hereinafter provided. In no case, however, will a pension be allowed until a member has paid assessments for a period of two years as outlined in Section 16."

From this section the inference is strong, and deduction plausible, that if an applicant cannot show that he has been disabled a year, or that his disability is such that no question of doubt as to its permanency can exist, he would be unsuccessful in getting his application for pension approved. Take deceased's situation in the instant case for example. He was unquestionably permanently and totally disabled for the period of one hour. Obviously he could not have qualified under the one-year requirement of disability of section 17. Could he have come within the exception? Likely not. True, his death foreclosed any question as to the permanency of his disability, but is not the connotation strongly implied in the section that the applicant must be among the disabled living? We think it is, and that the purpose and intention of the pension certificate contract is not the same as life insurance upon which the contract is to pay on the death of the holder, but rather a contract under which a disabled member must make application and have it approved before the benefits vest.

While section 17 is not directly involved in the present action, we make these observations with relation thereto for the purpose of demonstrating that when a member's name gets on the pension roll, such fact presupposes the proposition that he was able to qualify and bring himself within the association's action under section 17. The placing of the name on the roll is in itself a mere formal act, but the requisites leading up to that point are of sufficient substance to necessitate a compliance with the requirements preceding such formal entry—that is, a performance of the conditions precedent contracted to be per-

formed. (*Oldham* v. *Supreme Lodge, etc.,* 170 Mo. App. 564, 157 S. W. 92; *Brown* v. *Grand Council, etc.,* 81 Iowa, 400, 46 N. W. 1086; *Barclay* v. *London Guarantee & Accident Co., Ltd.,* 46 Colo. 558, 105 Pac. 865; *Knights of Columbus* v. *Burrough's Beneficiary,* 107 Va. 671, 60 S. E. 40, 17 L. R. A. (n. s.) 246.)

A case strikingly parallel to this is that of *Brotherhood of Railroad Trainmen* v. *Walker,* 165 Miss. 698, 147 So. 655. In that case Walker and his wife, during Walker's lifetime, made application to the local secretary and treasurer of the Brotherhood for a pension, and it was through the negligence of that local officer that Walker's pension application was not submitted to the Grand Lodge and the Pension Department, and Walker's name was not placed upon the pension roll. At death, the Brotherhood refused to pay a pension to the widow. The court held that the Brotherhood had to pay the pension to Walker's widow.

Both parties rely on the *Walker Case* to sustain their respective positions. Neglectful or arbitrary action of officials relative to getting deceased's name on the pension roll is not involved here, but the case is significant and is authority for the proposition that the holder of a pension certificate must take the necessary steps to be placed on the roll. (See section 18 of general rules, supra.) It also recognizes the fact that a showing must be made that the applicant was entitled to be on the pension roll.

Here, certainly neither the deceased member nor surviving widow was at fault for not having sooner applied for the pension. An earlier application would probably have been premature and without standing before the Board of Pensions in the absence of a showing that deceased was seventy years old and living, or totally and permanently disabled. The substance of the situation therefore appears to be that the pension certificate provided a comparatively limited measure of protective security to its holder, i. e., monthly income ($35) on attaining the age of seventy, permanently retired from active service by his em-

ployer, or a monthly payment of that amount before reaching that age providing such member became totally and permanently disabled and lived, or had good prospects of living.

The record before us does not disclose what, if any, other plans of protection the respondent Brotherhood offered its members; whether deceased selected the pension certificate plan from choice or otherwise, or what qualifications were necessary for an applicant to obtain the pension part of the Brotherhood's program. However, in the *Walker Case*, supra, decided in 1933, and involving the same Brotherhood as here and the identical sections of the constitution and general rules, the Justice in stating the case made the following observation:

"The brotherhood issues to its members a beneficiary certificate, or insurance policy, with certain provisions for total disability, and such member must be a policyholder in order to secure a pension certificate, but the pension department and the beneficiary department are entirely separate departments, and the holders of policies must look to the particular department funds for payment of their claims."

If this was the requirement in deceased's case, and he had the required insurance policy, then perhaps the seemingly harsh loss to the widow resulting from—not non-compliance with the association's rules, but rather, under the circumstances, impossibility to ever bring or have been brought within the benefits of the pension—is lessened and the iniquity of the forfeiture somewhat minimized. But, if the pension certificate plan was taken out by deceased without alternative, then indeed for an association characterized as a fraternity and emblemized by the name of "Brotherhood" does it seem to us that the spirit of fraternalism and brotherhood, theoretically supposed to exist in this type of organization, is sadly lacking, and its operation influenced more by the strict letter of the contractual obligations it engages in, rather than the benevolent purposes for which such non-profit associations exist.

Judgment affirmed.

Associate Justices Morris, Angstman and Erickson concur.

Mr. Chief Justice Johnson:

I concur in the above decision with the exception of the last three paragraphs, which seem to me obviously to have no application to the case.

Rehearing denied December 11, 1939.