McDONALD, RESPONDENT, *v.* NORTHERN BENEFIT ASSOCIATION, APPELLANT.

(No. 8,334.)

(Submitted September 17, 1942. Decided November 27, 1942.)

[131 Pac. (2d) 479.]

596

598

*Mr. Jess L. Angstman,* for Appellant, submitted a brief and argued the cause orally.

*Messrs. Burns & Thomas,* for Respondent, submitted a brief; *Mr. Harry Burns* argued the cause orally.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

Defendant, Northern Benefit Association, appeals from a ▉ judgment entered against it and in favor of plaintiff on a directed verdict in a suit to recover death benefits claimed under a certificate issued to plaintiff's husband. The defendant is a corporation apparently operating as a mutual benefit association under section 6159, Revised Codes, since it has no reserve or guarantee fund and is not, therefore, an assessment life insurance company under Chapter 34 of the Civil Code, sections 6293 to 6304, and since it has not a "lodge system with ritualistic form of work" and its membership is not limited to the members of such lodge system, and it is not, therefore, a fraternal benefit society under Chapter 35 of the Civil Code, sections 6305 to 6344, now amended by Chapter 130 of the 1941 Session Laws.

The complaint alleges that Alex McDonald died on about March 15, 1939; that prior to his death defendant issued to

him an "assessment benefit policy" made part of the complaint by annexation as an exhibit; that the policy was in effect at his death; that plaintiff was named as the beneficiary and is the widow of the deceased; that under it defendant became liable to the plaintiff for $410, paid as an assessment upon the defendant's members, less a deduction of ten per cent for expenses, or $369; that both deceased and plaintiff performed all conditions of the policy; that prior to suit plaintiff gave defendant notice of the death in accordance with the terms of the policy, and demanded payment; that nothing had been paid thereon except $100, and that $269 remained due and owing to plaintiff.

The answer admitted that the defendant had issued the certificate in question, that the plaintiff was named beneficiary thereunder, and that Alex McDonald had died, but alleged that the date of his death was March 24, 1939, and denied the other allegations mentioned above. It then alleged "as a separate defense and by way of affirmative relief" that on December 24, 1938, McDonald applied for the certificate by a written application, which was set forth in the answer in full, and that therein he represented that he was in good health and free from disease and had not within the last five years consulted a doctor for any cause, and that he had never consulted a physician for any of certain named diseases or disabilities, including high blood pressure; that the representations were false in that McDonald was not then in good health and free from disease, that he had consulted a doctor on numerous occasions within the five years preceding date of application, that he had been treated for high blood pressure and other diseases enumerated in the application, all of which were known to McDonald and to plaintiff; that the representations were made by him with intent to deceive and defraud defendant; that defendant acted in reliance on said representations, was thereby induced to issue, and issued said certificate; that upon proof of death defendant paid the plaintiff $100. Judgment was sought for repayment of the $100 with in-

terest. The affirmative allegations, with the exception of the payment of $100, were placed in issue by the reply.

The relevant portions of the certificate are as follows: "This is not an insurance policy. All benefits are dependent upon assessments from members. The Association maintains no reserve. * * *

"In Consideration of the Membership Fee of $3.00 and Registration Fee of $2.00, the application executed by the member personally, and the further payments of all assessments required under the conditions of this Certificate, and during the continuance of this Certificate of Membership entitles

"Alex McDonald

(Hereinafter Called Member)

"to all of the Benefits as provided in this Certificate and in the event of the Natural or Accidental Death of said member, entitles Cora McDonald Wife named as beneficiary, to an amount not to exceed

"Five Hundred Dollars

"The Conditions and Benefits upon the following pages hereof are a part of this Certificate as fully as if recited over the signatures hereto affixed."

The "Conditions and Benefits" set forth in the certificate include the following:

"This certificate and the application therefor, shall constitute the entire certificate with the member. All statements by the member shall, in the absence of fraud, be deemed representations and not warranties, and no such statements shall void this certificate unless contained in the written application.

"This certificate is issued and accepted subject to the statements, agreements and warranties contained in the application therefor and to such contributions as may be necessary to pay losses and expenses of the Association. * * *

"When death shall occur to members to which this certificate is issued and the Association is liable therefor, the

Secretary of this Association, if the governing officers deem it necessary, may call upon each member for donations or contributions to pay such death loss or losses but contributions therefor shall not exceed $1.00 for each certificate holder for any one death. Any benefits mentioned in this certificate are conditioned upon contributions being collected from the members. It is further agreed and understood that the Directors shall not have power to call for contributions more than once every thirty days. It being expressly understood that should the proceeds of contributions collected for deaths of members amount to less than the total liability of the Association accruing during any calendar month, then and in that event after there has been deducted from the amount collected the necessary expenses, if any, for that period of time, any liability or benefits payable under the terms of this certificate shall be satisfied in full by the Association paying over to the member or beneficiary the balance of contributions received, not exceeding the maximum benefit specified."

The application filed by McDonald shows that he answered in the negative the questions whether he had ever consulted a physician for any of the diseases or disabilities named, including high blood pressure, and whether he had consulted a doctor for any cause within the last five years, and that he answered in the affirmative the question "Are you in good health and free from disease?" It contains the further provision: "It is hereby provided and mutually agreed that this application and the by-laws shall be considered part of the contract for membership. I further agree that no solicitor has authority to bind the Ass'n. in any manner whatsoever; that he is not acting on behalf of the Ass'n. but for me by submitting this application to the Ass'n. for approval. I also agree that there will be no liability on the part of the Ass'n. unless and until the certificate of membership is issued and delivered to me while I am alive and in good health, free from disease and that no liability shall exist against the Ass'n. if

any of the answers to the above questions relative to my health on the date below are found to be untrue."

The plaintiff's evidence showed that McDonald died on March 24, 1939; that notice was given by plaintiff on the same day; that two payments of $50 each were made to plaintiff in July (or August) and October, 1939; that the total amount collected on assessment in March, 1939, was $368, and that ninety per cent. thereof, or $331.20, was applicable to claims accruing during that month.

Plaintiff objected to the receiving of any testimony on defendant's part on the ground that the answer failed to state a defense. However it is not necessary to consider the matter upon this blanket objection, since it was clearly directed only to the affirmative defense, and in any event the first part of the answer clearly put in issue plaintiff's right to recover under her complaint and thus constituted a defense so as to entitle defendant to present evidence.

Over the same indefinite objection defendant produced the testimony of Dr. Charles Houtz that McDonald had been a patient of his within five years prior to December 24, 1938; that he treated McDonald "for dizzy spells, and pain in his chest in the region of his heart, and high blood pressure"; that a cerebral embolism, or something of that nature, was usually the death cause of one suffering from those disabilities, and that McDonald "would call at the office probably half a dozen times in a year." Defendant's secretary identified McDonald's application, and testified that the defendant had no agents, that it relied upon the application and was induced by it to issue the certificate, that "all we have to go by is their answers to this questionnaire," and that "we rely on the statements made in the application absolutely," that later, after it had paid the $100, defendant discovered the falsity of the representations. The death certificate gave "cerebral embolism" as the cause of the death. The secretary testified also that the practice was to make an assessment of only $1 from each member on the first of each month and that the resulting

collections, less ten per cent. for expenses, were used to pay any death claims arising during that month. No evidence was submitted by either party whether any other claims were presented during March, 1939.

Upon the close of the evidence, plaintiff moved for a directed verdict for $231.20 on the ground that rescission was not properly shown in various respects, and the court then permitted defendant to reopen the case. Defendant's secretary testified that "in the fall of '39, we found that there was misstatements made for certain"; that he and a Mr. Richardson went to the office of Mr. Rhodes, an attorney to whom he had already made the two $50 payments for plaintiff; that after some discussion there they went directly to Dr. Houtz' office and that the latter told witness "that he wouldn't recommend him (McDonald) for insurance for the last ten years, that he hadn't been fit for it, his health." He also testified that he notified Mr. Rhodes that no further payments would be made when he "saw the cards in his office that day," apparently meaning just before he went to the doctor's office. On cross-examination he testified that prior to the second payment "others had been saying that he was not in good health," that "we heard it during the summer"; that "possibly" the second payment was made after they had heard "that there was some probability he was not in good health" when he made his application.

Counsel for plaintiff then restated his motion for directed verdict on these four grounds: That the answer failed to plead rescission of the contract but attempted to avoid it and did not plead the avoidance properly; that the plaintiff's evidence failed to show rescission; that the evidence failed to show due diligence in securing any facts which might have justified a rescission; that upon the receipt of knowledge of any fraudulent statements or misrepresentations, defendant had failed to act with due diligence.

The court granted the motion upon the grounds that it was stipulated in the certificate that the statements in question

were representations and not warranties; that the contract was therefore voidable and not void; that rescission was not made promptly nor within a reasonable time in that although the full discovery was made in October, "some notice of the facts evidently was received in the middle of the summer"; that by making the October payment "they absolutely waived any right to rescind this contract." Directed verdict and judgment thereon were entered accordingly.

The specifications of error are that the court erred in granting the motion for directed verdict, and that the evidence is insufficient to sustain the verdict. Defendant contends that under the uncontradicted evidence the contract is void, and that there is no liability under it. The above recital of the pleadings shows that the first part of the answer put in issue defendant's liability under the contract. The remainder of the answer contained allegations sufficient to constitute the affirmative defense that the certificate was obtained by fraud, the affirmative defense that by the terms of the contract itself there was no liability under the circumstances, and a counterclaim for the $100 paid before discovery of the facts constituting the defenses. It does not include all of the elements necessary to entitle defendant to the equitable defense of rescission; but it is not necessary to consider whether those elements were added by evidence received without objection unless we find that the legal defenses pleaded were insufficient or that they were not sustained by the evidence.

The application included the answers to just three questions concerning health, namely that McDonald had never consulted a physician for any of the diseases named, that he had not consulted a doctor within the past five years for any cause, and that he was then in good health and free from disease. The evidence shows without dispute that all of these answers were untrue at the date of the application and the issuance of the certificate, and that he was not in good health or free from disease when the certificate was issued and delivered to him. There is no question that the uncontradicted evidence sus-

tained the defenses pleaded. The question, therefore, is whether those defenses are sufficient, and the answer to that question depends upon the interpretation of the contract provisions mentioned in the next three paragraphs of this decision.

As shown above, the contract provides that "this certificate and the application therefor, shall constitute the entire certificate with the member"; that "this certificate is issued and accepted subject to the statements, agreements and warranties contained in the application therefor," and that "all statements by the member shall, in the absence of fraud, be deemed representations and not warranties, and no such statements shall void this certificate unless contained in the written application."

The written application, which is thus expressly made a part of the contract, contains this statement by the applicant, "I also agree that there will be no liability on the part of the Ass'n. unless and until the certificate of membership is issued and delivered to me while I am alive and in good health, free from disease * * *."

The application also contains this statement, "I also agree * * * that no liability shall exist against the Ass'n. if any of the answers to the above questions relative to my health on the date below are found to be untrue."

In litigation concerning insurance policies the rule is that any ambiguity in the policy shall be resolved against the insurer since the latter is responsible for the form of the contract. (*Montana Auto Finance Corp* v. *British & Federal Fire Underwriters,* 72 Mont. 69, 232 Pac. 198, 36 A. L. R. 1495; *Parke* v. *New York Life Ins. Co.,* 95 Mont. 503, 28 Pac. (2d) 443; *Scinski* v. *Great Northern Life Ins. Co.,* 110 Mont. 106, 99 Pac. (2d) 218.) The same is true of contracts effected between beneficial associations or mutual benefit societies and their members by the certificates, constitutions and by-laws. (10 C. J. S., Beneficial Associations, p. 269, sec. 28; 38 Am. Jur. 527, sec. 118. This is because of the rule, made statutory in Montana (sec. 7545, Rev. Codes), that in cases of uncertainty

the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.

On the other hand, an unambiguous contract of the kind ▮ is likewise subject to the same rules of construction as any other contract (*Swanberg* v. *National Surety Co.*, 86 Mont. 340, 283 Pac. 761; *Stevens* v. *Steck*, 101 Mont. 569, 55 Pac. (2d) 7; *Johnson* v. *Metropolitan Life Ins. Co.*, 107 Mont. 133, 83 Pac. (2d) 922), and in the absence of fraud and questions of public policy, controversies arising out of such contractual relations must be determined by the contract as made and not by a new one devised for the parties by the courts. (*Schroeder* v. *Metropolitan Life Ins. Co.*, 103 Mont. 547, 63 Pac. (2d) 1016; *Golden* v. *Brotherhood of Railroad Trainmen*, 109 Mont. 84, 96 Pac. (2d) 428.)

The provisions in question are entirely unambiguous and ▮ ▮ with the exception of the words "representations" and "warranties" were clearly not used in any technical sense and have no special meaning attached to them by usage. With the exception of those two words, the provisions must therefore be understood in the ordinary and popular sense (sec. 7535, Rev. Codes), are not uncertain or ambiguous, and cannot be misunderstood.

The first provision to be examined is that "all statements by the member shall, *in the absence of fraud,* be deemed representations and not warranties, and no such statements shall void this certificate *unless contained in the written application,*" which certainly conveys the meaning that in the presence of fraud the statements are warranties and that if they are contained in the written application they shall void the certificate. If such false statements voided the certificate, it was obviously unnecessary for the defendant to plead equitable rescission in order to avoid liability.

Under virtually an identical provision and similar pleading and proof, this court said in *Williams* v. *Mutual Life Ins. Co. of New York*, 61 Mont. 66, 201 Pac. 320, 321: "Construing the paragraph of the policy above mentioned, in the light of these

facts, it is for this court to determine whether or not such misrepresentations shall be deemed fraud and construed as warranties affecting the validity of the policy. This court had a similar question under consideration in the case of *Pelican* v. *Mutual Life Ins. Co.*, 44 Mont. 277, 119 Pac. 778, in which the rule applicable to this case was laid down as follows: ''That upon the payment of the first premium it (the policy) became a contract binding upon the defendant, unless the latter could show that it was induced to issue it by actual fraud practiced upon it by Pelican, in failing to answer fully and fairly each question propounded to him, according to his best information and belief. * * * This being so, the burden was upon defendant to show, not only that the representations were untrue, but were made with the intent to conceal the condition of Pelican's health, and that defendant would not have issued the policy but for the fraud thus practiced upon it. 'Each party to a contract of insurance must communicate to the other, in good faith, all the facts within his knowledge which are, or which he believes to be, material to the contract, and which the other has not the means of ascertaining, and as to which he makes no warranty.' (Rev. Codes, sec. 5570 [now sec. 8085].) Therefore, if the insured intentionally conceals facts which are material, or makes false representations with reference to them, intending to mislead the insurer, he is guilty of actual fraud, which, at the option of the latter, avoids the policy. Such a fraud, however, is always a question of fact for the jury (Rev. Codes, sec. 4980 [now sec. 7482]), and, unless the condition of the evidence is such that only one inference may be drawn from it, the court may not direct a verdict. The inquiry is: First, as to the truth of the representations; second, if untrue, whether they were intended to mislead; third, whether the adverse party accepted them as true and acted upon them; and, fourth, was he prejudiced? (*Power & Bro.* v. *Turner,* 37 Mont. 521, 97 Pac. 950.) The concealment of the material fact is equivalent to a false representation that it does not exist.

"We cannot escape the conclusion that the insured made false statements with knowledge of their falsity; that the defendant accepted his representations as true, acted upon them, and was prejudiced. * * * The evidence upon this feature of the case being uncontradicted and it being possible to draw only one inference from it, there is presented a question of law for the court and not a question of fact for the jury. The fraud being conclusively established, the evidence was insufficient to sustain a verdict in favor of plaintiff."

In that case the court therefore reversed and remanded the cause with directions to enter judgment in favor of defendant.

The second provision, that "there will be no liability on the part of the Ass'n. unless and until the certificate of membership is issued and delivered to me while I am * * * in good health, free from disease," strictly is neither a representation nor a warranty in the sense of an inducement for the issuance of the certificate (*Logan* v. *New York Life Ins. Co.*, 107 Wash. 253, 181 Pac. 906) but a condition precedent which, like a warranty, must be strictly complied with or literally fulfilled to entitle the beneficiary to recover on the policy. (*Schroeder* v. *Metropolitan Life Ins. Co.*, supra; *American Bankers' Ins. Co.* v. *Thomas*, 53 Okl. 11, 154 Pac. 44; *Guarascio* v. *Prudential Life Ins. Co. of America*, 110 Wash. 1, 187 Pac. 405.) "Good health" or "sound health" does not apply to temporary or minor indisposition but means freedom from any physical affliction or disease of a serious nature tending to undermine the constitution of the subject. (*Schroeder* v. *Metropolitan Life Ins. Co.*, supra; *Klein* v. *Farmers & Bankers Life Ins. Co.*, 132 Kan. 748, 297 Pac. 730.) Under this defense there can be no doubt that the applicant was not in good health when the certificate was issued, and therefore that it never became effective, under the express provisions of the agreement.

The third provision, that no liability shall exist if any of the answers relative to health "are found to be untrue," is neither a warranty nor a representation, but in the nature of a defeasance of the contract. As the court said in *Chambers*

v. *Northwestern Mut. Life Ins. Co.*, 64 Minn. 495, 67 N. W. 367, 368, 58 Am. St. Rep. 549, "It is more in the nature of a defeasance, where the insured contracts that, if the representations made by him are not true, the policy shall be defeated and avoided." Where one with knowledge of his condition buys a non-medical policy or certificate with such provision, he knows that if the facts are discovered by the insurer there can be no recovery, and obviously relies on the sole hope that they will not be discovered.

Under the second provision, the certificate never became effective; under the first and third provisions, if it had become effective, liability under it would have been voided by the misrepresentations, and no recovery could have been had. Therefore this is not a case in which the defendant was by fraud induced to enter into a binding contract, to escape liability under which it must resort to the equitable remedy of rescission. For that reason the requirements that in rescission there must be prompt action upon discovery of the facts, and an offer to restore the consideration paid, do not apply. Furthermore, it is undisputed that the plaintiff has $100 of the defendant's money, which was paid to her before discovery of the facts and which greatly exceeds the $5 paid when the certificate was issued and the $1 assessment called for on the first of each month between the issuance of the certificate in December, 1938, and the applicant's death in March, 1939, or a total of $8.

Whether, as an incident to its defense of nonliability under the certificate, the defendant should repay the $8 paid by the member is another question. It might seem that under our holding upon the second provision discussed above that no liability ever accrued, the $8 consideration should be returned. However section 8134, Revised Codes, requires a contrary result. It provides, "A person insured is entitled to a return of the premium * * * when, by any default of the insured *other than actual fraud,* the insured never incurred any liability under the policy." Presumably the exception noted was due to the inequity involved in requiring a return of the premium

where the defendant has by fraud been put into a position causing him trouble or expense.

The final question is defendant's right to recover the $100 paid before discovery of the facts disproving liability under the certificate. There is no doubt that a party is entitled to sue and recover money which he has paid by mistake of fact, or of mingled fact and law, and which the receiver ought not, in equity and good conscience, to retain. (*Gaffner* v. *American Finance Co.*, 120 Wash. 76, 206 Pac. 916, 28 A. L. R. 624. See, also, 48 C. J. 759, sec. 318ff; 40 Am. Jur. 844, 848, sec. 187ff.) The fact that the second payment of $50 was made after the defendant had some reason to suspect the falsity of the answers to the questions concerning the member's health, does not affect the defendant's right to recover the money, not in itself having the elements of an estoppel, or of a waiver, which latter consists of the *intentional* relinquishment of a known right (*Osborne* v. *Supreme Lodge, K. P.*, 69 Mont. 361, 22 Pac. 456), and not apparently having caused plaintiff to change her position for the worse so as to entitle her in equity and good conscience to keep the money. (*Smith* v. *Rubel*, 140 Or. 422, 13 Pac. (2d) 1078, 87 A. L. R. 644; 40 Am. Jur. 848, secs. 194, 195; 48 C. J. 765, sec. 325ff.) No such defense to the counterclaim having been pleaded in the reply, defendant is entitled under the pleadings and evidence to judgment upon it.

The judgment is therefore reversed and the trial court ordered to render judgment in favor of defendant upon both causes of action.

ASSOCIATE JUSTICES ANGSTMAN, ERICKSON, ANDERSON and MORRIS concur.