No. 13302

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

HAROLD STURDEVANT,

Plaintiff and Appellant,

-vs-

GARY MILLS,

Defendant and Respondent.

Appeal from: District Court of the Eighteenth Judicial
District,
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

Tipp and Hoven, Missoula, Montana
Raymond P. Tipp argued, Missoula, Montana

For Respondent:

Bennett and Bennett, Bozeman, Montana
Lyman H. Bennett III argued, Bozeman, Montana

Submitted: March 9, 1978

Decided: JUN 1 9 1978

Filed: JUN 1 9 1978

_Thomas J. Kearney_
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Plaintiff Harold Sturdevant, an insurance general agent, appeals from a judgment of the District Court, Gallatin County, denying recovery of advances made by him to Gary Mills, an insurance agent.

Plaintiff is an insurance general agent residing in Missoula, Montana. He recruited defendant to sell life insurance written by Minnesota Mutual Life Insurance Company of St. Paul, Minnesota, a company for which plaintiff was a general agent. Defendant was to sell Minnesota Mutual policies out of an office located in Bozeman, Montana.

By an agreement signed by plaintiff (hereinafter General Agent) and defendant (hereinafter Agent) on December 15, 1969, and approved by Minnesota Mutual two weeks later, Minnesota Mutual agreed to advance $1,000 per month to General Agent for Agent's use in financing his new operation. By the terms of this "Agent's Advance Agreement", the advances were to be made against first-year commissions the Agent was expected to earn in the course of selling life insurance policies. The agreement provided that the advances may be made if the Agent had met each of three conditions: (1) Satisfactory performance on certain tests; (2) completion of all precontract training; and, (3) selling of sufficient policies to generate minimum monthly premium amounts set forth as "validation requirements" in the agreement. The agreement also provided:

> "The Agent and General Agent agree that:
>
> "A.  All advances are loans to the General Agent and Agent repayable on demand, and guarantee the Company against loss on any indebtedness created by these advances."

By early spring of 1970 the Agent was in financial difficulty. His insurance sales had not met the "validation requirements" of the Agent's Advance Agreement since his first month on the job.

The General Agent was aware of the Agent's predicament and discussed the continuation of the advances with him and with Minnesota Mutual. The General Agent testified the insurance company "took the position that it probably wasn't good business but it was my money so if I wanted to advance it to go ahead." The General Agent then continued to make $1,000 monthly advances to the Agent.

The Agent's financial problems grew more acute. He met with a Bozeman attorney and attempted to work out an assignment for the benefit of creditors. The General Agent knew of the assignment plan and thereafter withheld certain amounts from the Agent's monthly advances to pay the Agent's creditors and the Agent's attorney.

The assignment plan proved to be ineffective, and in September 1970 the Agent filed for bankruptcy. The General Agent's participation in the preparation of the Agent's bankruptcy petition was a matter in dispute at trial of the cause, with each side presenting sharply conflicting evidence. The District Court resolved those issues against the General Agent.

The Agent's testimony placed the General Agent at the center of the bankruptcy preparations. He testified the General Agent knew of his plan to file bankruptcy, that both were present at a meeting with the Agent's attorney when bankruptcy was decided, and that the General Agent advised him regarding creditors to be listed on the bankruptcy petition. The Agent further testified the General Agent warned him that if either the General Agent or Minnesota Mutual was listed as a creditor for the advances received, the Agent would most likely lose his job.

The General Agent denied he had anything to do with the bankruptcy. He denied discussing bankruptcy during the meeting with the Agent's attorney. He also denied advising the Agent he

would be terminated from employment if he listed either the
General Agent or Minnesota Mutual in the bankruptcy/petition. He testified he knew nothing about the bankruptcy plan until after the bankruptcy had already occurred.

The Agent's attorney testified all three were present at the meeting and bankruptcy was discussed. However, he could not recall anything specific about what was said at that or any other meeting between the three.

When the Agent's bankruptcy petition was filed, neither the General Agent nor Minnesota Mutual was included in its list of creditors. The Agent continued to receive advances through October 1970, even though his sales production remained minimal. All commissions he had earned were retained as partial repayment of money previously advanced. The advances ultimately totalled approximately $11,000 and the retained commissions amounted to between $1,100 and $3,500.

After the Agent's bankruptcy the General Agent paid Minnesota Mutual the balance owing on the amount the insurance company had advanced to the General Agent for the Agent's use. By this time, the Agent had terminated his relationship with the General Agent and Minnesota Mutual. The General Agent then demanded repayment from the former Agent. Repayment was refused, and three years later, on February 11, 1974, the General Agent brought the present action to recover the advances.

The District Court, sitting without a jury, entered findings of fact and conclusions of law on November 24, 1975. On December 2, 1975, the District Court entered judgment in the Agent's favor. The General Agent appeals from this judgment and from the District Court's denial of his motions to amend the findings of fact and conclusions of law and to set aside and vacate or modify the judgment and for a new trial.

-4-

The issue the General Agent presents for review is whether the District Court erred in ruling that the Agent was not obligated to repay the advances he received.

The General Agent first contends he is entitled to contribution from the Agent because both parties were jointly obligated to repay Minnesota Mutual any money received from the insurance company under the Agent's Advance Agreement. While the agreement was considered by the District Court, and by its terms it imposes joint liability upon the Agent and the General Agent for repayment of advances funded by the insurance company, nothing in the General Agent's pleadings indicates the suit was based in any way on a joint obligation or alleges the General Agent was compelled to pay what the Agent should have paid. The complaint was not based on a theory of contribution, but on the simple theory the Agent was indebted on a loan.

Since the question of whether contribution applies on the facts of this case is raised for the first time on appeal, and was not properly presented to the District Court, we will not review it. Montana Association of Underwriters v. State of Montana, (1977), ____ Mont. ____, 563 P.2d 577, 34 St.Rep. 297, 302.

The General Agent's next contention is that the Agent must repay the advances he received because those advances were loans which he agreed to repay by signing the Agent's Advance Agreement. The General Agent acknowledges he and the Agent made no agreement between themselves regarding repayment of advances, and he also concedes the Agent failed to meet the validation requirements set forth in the Agent's Advance Agreement. Nevertheless, he argues those facts have no effect on the Agent's obligation to reimburse him for money advanced because all parties waived the validation requirements and the agreement therefore remained in full force and effect.

However, his reliance on a waiver is misplaced. He testified Minnesota Mutual told him he was on his own with respect to continuing advances under the circumstances. The insurance company's response does not constitute a waiver of the Agent's nonperformance of the Agent's Advance Agreement. At most, it reflects the company's judgment that it had little to lose in any event. The risk was the General Agent's alone, not Minnesota Mutual's.

The risk was taken due to the General Agent's desire to reap the benefits of continuing advances made to the Agent; benefits which would result when a sufficient amount of insurance was sold through the Bozeman operation. The General Agent knew he would have to repay Minnesota Mutual any money disbursed to the Agent from the advances received from the insurance company. He also knew those advances were terminable at any time at the option of either himself or Minnesota Mutual. He continued the advances knowing the Agent did not meet the Agent's Advance Agreement and after being told by Minnesota Mutual that he was on his own.

Under these circumstances, the advances were voluntary payments to the Agent. As defined at 70 C.J.S. Payment §134, a voluntary payment is:

> "* * * a payment made without a mistake of fact
> or fraud, duress, coercion, or extortion, on a
> demand which is not enforceable against the payor
> * * * and whether in a given case a payment is
> voluntary depends on the facts of the particular
> case, as indicating an intention on the part of
> the payor to waive his legal rights. * * *"

There was no mistake involved here, nor were the advances continued because of fraud, duress, coercion or extortion. They were continued because the General Agent envisioned a benefit from their continuation. He did nothing to preserve his recovery rights against the Agent. There was no agreement between him and the agent requiring the Agent to repay the advances. Nor was there

-6-

any understanding between them that the Agent was incurring individual liability as each advance was received.

Moreover, the General Agent's conduct with regard to the Agent's bankruptcy is further indication of his right to demand repayment of the advances. The District Court found the Agent did not receive a discharge in bankruptcy of any indebtedness resulting from the advances received because of the General Agent's representation that the Agent would lose his employment if he named either the General Agent or Minnesota Mutual in his bankruptcy petition.

The General Agent's representations induced the Agent to change his position for the worse. Facing a future in which his job would be the only thing remaining after bankruptcy, he relied on those representations in foregoing immediate discharge. When a detrimental change in position is made in reliance on the conduct of another indicating a waiver of present rights, a waiver of recovery rights is established. See, McDonald v. Northern Benefit Assn., (1942), 113 Mont. 595, 610, 131 P.2d 479.

We hold on the facts of this case the General Agent has no right to recover money voluntarily paid to the Agent in the form of advances against sales. This is consistent with the rule stated by the Oregon Supreme Court in Adams v. Crater Well Drilling, Inc., (1976), 276 Or. 789, 556 P.2d 679, 681:

> "As a general rule money which is voluntarily
> paid with full knowledge of facts which would
> excuse payment cannot be recovered. * * *"

It is also consistent with our conclusion that in equity and good conscience the Agent should not be held liable for advances voluntarily made to him and not scheduled by him in reliance on the General Agent's representations. The General Agent stood to benefit from the risk of continuing advances, and under the

circumstances should not be able to avoid the consequences of his enterprise.

The judgment of the District Court is affirmed.

_____
                Justice

We Concur:

_____

_____
        Justices

_____
Hon. Alfred B. Coate, District
Judge, sitting with the Court.

Mr. Chief Justice Frank I. Haswell concurs with the result.

_____
            Chief Justice